SOMMERVILLE, J.
Plaintiff sues the defendant company in damages for personal injuries in the sum of $1,000, and for the destruction of his automobile in the sum of $1,100, all of which he alleges occurred through the fault and negligence of the defendant. Defendant answers that the automobile of plaintiff was not entirely demolished, and that he did not suffer any personal injuries whatever. Defendant further denies any fault or negligence on its part, and charges gross negligence on the part of plaintiff in attempting to drive his automobile over the tracks of defendant, where the lane on which he was running crossed the tracks at right angles just ahead of the defendant’s train. There was judgment in favor of plaintiff for the automobile in the sum of $1,100, and the claim for personal injuries was rejected. Defendant has appealed, and plaintiff asks for the amendment of the judgment by increasing it to $2,100.
It appears from the evidence that plaintiff, together with three friends, was driving his automobile down the main public road of the parish of St. Bernard, which is a continuation of St. Claude’street of New Orleans, and which parallels the tracks of the defendant company, and which tracks are located auout 75 to 80 feet on the river side of the public road. It also appears that a train of freight cars left the Frisco crossing at about the same time that plaintiff left it, which is about a mile and a half above the Fazendeville crossing, where the accident occurred. The train consisted of an engine and 12 box cars which were being backed down the track at a somewhat rapid rate. This train was properly manned, with lookouts on the forward end. It is shown that the engineer blew his whistle at the half mile post before reaching the crossing, and that the bell was an automatic bell which was being rung continuously from the time that the train left the Friseoville crossing. It is further shown by defendant’s witnesses that they were within view of the automobile belonging to plaintiff all the way down the road, and that they expected it to continue going down the public road; instead, the automobile was turned at Fazendeville crossing, and ran in front of the train before the train could be stopped; that plaintiff did not stop, or look, or listen before going upon the track; and that the lookouts on defendant’s train gave all the necessary warnings, and did what they could to avoid the accident.
It is testified by plaintiff and one of his witnesses that, although they and the train left Friseoville at about the same time, they did not see the train, because of weeds intervening between the public road and the track. *821 These same witnesses testified that they heard no bell, or whistle, or noise of the moving train, although after having turned into the Fazendeville crossing they stopped the automobile and looked and listened.
[1] Both railroad and travelers on intersecting highways “are charged with the mutual duty of keeping a careful lookout for danger,” and both must use “the degree of diligence, * * * a prudent man would exercise under the circumstances.” Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403.
The evidence is clear that the defendant company was keeping a careful lookout for danger, and that its employés were diligent; that the bell of the engine was operated by air, and that it was ringing from the time the train left Friscoville until the time it was stopped after the accident; that the danger signal was blown at the usual place; and that the bell and signal might have been heard by plaintiff if he had been listening therefor all the time he was on the public road. It is further shown that plaintiff unexpectedly turned from the public road into a crossing, running at right angles with defendant’s track, without stopping or looking or listening for danger on the railroad track which he knew he was about to cross.
Plaintiff and one of his witnesses testify that he, while on the Fazendeville crossing, stopped his automobile before he reached the railroad track because of a man and his wheelbarrow occupying a part of the roadway on the river side of the track. If plaintiff stopped his automobile on this crossing, he was not seen to stop by the employes of the defendant company, who were on the lookout. And, if he did stop, he should have stopped sufficiently close to the railroad track to have been able to look up and down that track, and, if he stopped his automobile, he should have seen and heard the moving train on the track. It is equivalent to not looking or listening if one fails to see and hear a noisy train as it runs over the track, with bell ringing in very close proximity to him.
[2, 3] If a traveler fails to stop, look, and listen before crossing a railroad track in the' country, he is at fault; and he cannot recover damages because of injuries inflicted because of a collision with a train on said track. The testimony of plaintiff to the effect that weeds and willows intercepted his vision, and that he could not see the moving train is contradicted by the testimony of the crew on the train to .the effect that the automobile was within their view all of the time that it was going on the public road. And the photographs of Fazendeville crossing show that the train and the auto were within view of one another at that crossing.
There is some evidence on the part of plaintiff that some of the weeds along the track ’’ad been cut after the date of the accident; but the only weeds shown to have been cut were a few willows, which the witness said were doubtless cut by some Italians or colored men to be used for bean poles for butter beans; that they were not cut down by the railroad company; and that those which had been cut were on the lower side of Fazendeville crossing, which could not have affected the view from the upper side of the crossing.
Witnesses for the defendant testify that they were present on the day of the accident, and that the weeds and willows did not obstruct the view sufficiently to obscure a train on the track; and they stood on the crossing some distance from the track.
It was the duty of plaintiff, before crossing the track, to have stopped, looked, and listened; and, where it is shown that the view was unobstructed and the accident occurred in the daytime, it is clear that the train was in plain view of plaintiff for a sufficient length of time before the accident to have al *823 lowed him to realize its presence, and to have avoided the danger.
In the case of Tatum v. Rock Island, A. & L. R. Co., 124 La. 927, 50 South. 798, we say:
“As the deceased could have avoided the accident by the exercise of the least degree of ordinary care, it is useless to inquire into the particular acts of negligence charged against the defendant, as none of them, if established, would affect the result.”
And in Eyma Brown v. Railroad Co., 42 La. Ann. 355, 7 South. 684, 21 Am. St. Rep. 374, it is said:
“No failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad’s failure to perform its duty.”
[4] Even if the weeds had obstructed plaintiff’s view, as he claims, his duty to stop, look, and listen was the more incumbent upon him. We say in Blackwell v. Railroad Co., 47 La. Ann. 270, 16 South. 819, 49 Am. St. Rep. 371:
“These obstructions, while they are not to be lost sight of in considering the question of responsibility, certainly should have suggested caution to travelers about crossing the tracks.”
And in Barnhill v. Railway Co., 109 La. 43, 33 South. 63, we say:
“The greater the difficulty of seeing and hearing the train as he approaches the crossing, the greater caution the law imposes upon the traveler.”
“The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger the greater the care that must be exercised to avoid it, as where,, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary.”
And Mr. Wilkinson, in his work on Personal Injuries, in commenting on the case of N. Y. C. & H. R. R. Co. v. Maidment, 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794, says:
“The looking and listening for an approaching train should be made at a time and in a place to make them most effective. It would be useless to look where the sight is obscured, or to listen where other greater noises drown the roar of the coming train. In other words, the precaution of the traveler should be reasonable, and by that is meant such precautions as-a reasonable man would exercise in the ordinary affairs of life. Because of the fact that a collision between a train and automobile endangers not only those in the automobile, but also those on board the train, and also because the car is more readily controlled than a horse vehicle, and can be left by the driver, if necessary, the law exacts from him a strict performance of the duty to stop, look, and listen before driving upon a railroad crossing where the view is obstructed, and to do so at a time and place where the stopping and looking and listening will be effective. We cite this decision, which is a little out of the ordinary, although it is not rendered by the courts of this state, for the reason that the greater number of automobiles now in use will soon bring about their quota of damage suits, and the law stated is correct and in accordance with reason and principle, and, we believe, will be applied when the question is presented to the courts of Louisiana. It is the first decision we have noted from the federal courts involving the rights of an automobile, and for that reason we thought that it would not be amiss to include it in this work.”
In the Maidment Oase just referred to it was said:
“From where he stopped it was impossible to see up the track, in the direction the west-bound trains would come from, further than 180 feet. Trees' and bushes on the property adjoining defendants’ right of way cut off all sight of the track beyond that short distance. * * *
“But the plaintiff was not without means of crossing in safety. A second man was in the automobile. He could have gone ahead to the east-bound track, or Maidment could have safely halted the machine there. Instead of doing this, and without sight of the west-bound track, save for the very short distance a swift train would quickly coyer, he took the chance of dashing across.”
It is not possible for plaintiff to have taken the care which he says he took on the day of the accident, and yet to have been struck by the train of the defendant. It was broad daylight, with the automobile and train proceeding in the same direction on parallel roads. The automobile suddenly left the pub- *825 lie road.and went onto the Fazendeville crossing; and plaintiff and his friends, the occupants of the automobile, had their attention on other things, ¿nd were not paying attention to the train, or what was going on about them. He was at fault, and cannot recover damages.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed, and that there be judgment in favor of defendant rejecting plaintiff’s demand at his cost.
MONROE, O. J., takes no part.