Statement of the" Case.
MONROE, C. J.
Defendant has brought up this appeal from a judgment condemning it to pay $10,000 as damages said to have been sustained by plaintiffs in tbe alleged negli *1097 gent killing of their son, a young man about 28 years of age, who lost his life under the following circumstances, to wit:
Defendant has a double track running north and south through Railroad avenue in the town of Ponchatoula! The tracks, which are between 8 and 10 feet apart, are crossed at a certain point by Pine street, which is, say, 100 feet wide; and 400 feet to the northward there is another street crossing. Upon the evening of March 27, 1912, near 8 o’clock, a through freight train was passing to the northward upon the eastward track, and as it was crossing Pine street the decedent was approaching Railroad avenue on Pine street from the westward, and passenger train No. 3, not scheduled to stop at Ponchatoula, was approaching the same point, going south on the westward track. Decedent walked along towards the freight train in a leisurely manner, smoking a cigar, and his attention was possibly attracted by a light upon the caboose at the rear end of the freight train, about which there is said to have been something peculiar, but, whether for that reason or because he was otherwise preoccupied, he failed to turn his eyes in the direction of the passenger train, and continued his walk until, coming to a point within reach of the steam chest which projected from 14 to 20 inches from the side of the boiler of the locomotive, he was struck thereby upon the head, his skull shattered, and he died immediately. The evidence satisfies us that the engineer had blown the station and crossing whistles, including one long and two short blasts for the crossing above Pine street; but it appears that his attention had also been attracted by the light on the caboose of the freight train, which he at first thought to be a semaphore signal, and he accordingly put on his brakes and checked the speed of his train. When about midway between the street above and Pine street, however, he discovered that the caboose light imported no particular significance, and he released his brakes; but he then saw the decedent approaching the track in front of him, and, realizing that he was oblivious of the proximity of the train, he, by the use of both hands, at practically the same moment sounded the alarm whistle, set in motion an automatic bell, and applied the emergency brakes, thereby, according to his uncontradicted testimony, making the shortest stop possible with the use of the most approved appliances. The record contains no testimony on the subject, but it is said in one of the briefs .that the town of Ponchatoula has a population of between 700 and 1,000 persons (probably scattered over a good deal of territory), and there is testimony to the effect that Pine street is the principal thoroughfare over which the neighboring farmers come and go at certain seasons, but no one testifies that they ever congregate at the railroad crossing or that there is any traffic over the street in the latter part of March near 8 o’clock in the evening, and at the moment of the accident there appear to have been less than half a dozen people in the neighborhood. It was conceded in the argument that there is no ordinance regulating the speed of passing trains, and counsel for plaintiff say of the train in question, “train No. 3, or the ‘Panama Limited,’ as it was then known, was the finest train belonging to the- defendant, and was composed of first-class cars, sleepers, and equipment,” to which they add, “It iá- a known fact that such trains make little noise.” One of the witnesses, who was town marshal and had held that office for a number of years, was related to plaintiff, and was called in his behalf, testified that he had been seated near a “milk shed” on Railroad avenue a few feet above the northwest corner of Pine street, and saw decedent walking eastward on the south side of Pine street until he had approached .within 10 or 15 feet of the westward track, when he (the witness), *1099 hearing the whistle of ’train No. 3, arose from his seat and. moved back a few feet, in the doing of which the locomotive passed him, and that in the same moment he again looked in the direction in which he had seen decedent (whom he had not recognized), and he saw—
“a flash up of something — of his cigar going up. Q. In other words, you walked 10 or 12 feet to the west from where you were, and you turned around, and then saw the flash of the cigar; is that it? A. Yes, sir. Q. And during that time that you were walking that 10 or 12 feet to the west Mr. Tucker was walking 10 or 12 feet to the east? A. Yes, sir. Q. Then he just about reached the track about the time the train reached him? A. That is the only way I can figure it out. Q. You figure it out that Mr. Tucker and No. 3 reached that point about the same time? A. That is the way.”
On his direct examination he had testified as follows:
“Q. When you heard that whistle [the whistle of No. 3] what did you do? A. I got up and stepped out of the way, and I saw her very soon. I saw him also walking down the other banquette, and I had no idea but what he heard the train coming.”
It is shown that the locomotive in question was “of the latetet make and latest equipment”; that it was provided with an acetylene headlight; that there was no obstruction to prevent the decedent from sdeing it far up the track and in ample time to have warned him against walking into the locomotive or placing himself in its way; that the train at the! moment of the accident was running at the rate of about 35 miles an hour, but it is not shown that that speed was unusual, and we infer from the testimony that the decedent had lived in or near Ponchatoula the! greater part, if not all, of his life, and that he was entirely accustomed to the idea of the use of Railroad avenue for that purpose and for railroad purposes generally. It appears that both of the original plaintiffs have departed this life since the appeal herein was lodged in this court, and that, on motion, an administrator has been substituted in their, stead.
Opinion.
[1] The evidence, in our opinion, fails to convict the engineer of negligence in the matter of the warning to be given of the approach of the train, and, if there was any negligence in the matter of the speed, it can hardly be attributed to him, as he merely obeyed his orders and endeavored, as he was directed, to operate an expensive train in a manner .to facilitate intercourse between different sections of a great country. If there was any fault in the matter, it was that- of the municipal authorities of Ponchatoula, and, back of them, of the electors who placed them in office, since it was within their power to have regulated the speed of passing trains, or to have elected officials who, would have done so, and they have had an abundance of time in which to consider that question; for, if we mistake not, the road has been built as now located for nearly three-quarters of a century. Whatever may be said, however, upon the question of the negligence vel non of the defendant, its engineer, the municipal authorities, or the electors, there can be no doubt of the negligence of the decedent, or that his negligence continued and concurred with whatever other negligence there may have been as a contributing cause of the accident. As was said by Chief Justice Bleckley of Georgia many years ago, and more recently quoted with approval by this court:
“It was at least as much his business to look for the engine as it was the engineer’s business to look for him. The engine was a much larger object than he was. It carried a headlight and could have been seen as far as he could. It was not possible for the engineer to have discovered him on the track sooner than he could have seen the headlight. The presence of the engine was more to have been expected by him than his presence was to be expected by the engineer. He had much less reason to be surprised than the engineer had.” Cent. R. & Bkg. Co. v. Smith, 78 Ga. 699, 3 S. E. 398; White v. Illinois Cent. R. Co., 114 La. 825, 38 South. 574.
*1101 And, as has been held by this court and others:
“No failure on the part of the railroad company to do its duty will excuse any one from using the senses of sight and hearing, upon approaching a railway crossing, and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence, without any reference to the railroad’s failure to perform its duty.” Brown v. Railroad Co., 42 La. Ann. 355, 7 South. 684, 21 Am. St. Rep. 374; Tatum v. Rock Island R. Co., 124 La. 927, 50 South. 796; Herlisch v. Railroad Co., 44 La. Ann. 280, 10 South. 628; Provost v. Y. & M. V. R. Co., 52 La. Ann. 1894, 28 South. 305; Harrison v. Railroad Co., 132 La. 761, 61 South. 782; Castile v. O’Keefe, 138 La. 479, 70 South. 481; Nelson v. Railroad Co., 140 La. 676, 73 South. 769.
[2] The Question of the right of the’ administrator to prosecute the suit has not beein raised, and we express no opinion concerning it.
It is, therefore, ordered that the judgment appealed from be annulled, and that there now be judgment for defendant, rejecting the demand herein set up and dismissing this suit; the plaintiff (administrator) to pay all costs.