No. 1408

First Circuit

---

WALKER v. L. R. & N. CO.

---

(May 3, 1927. Opinion and Decree.)
(June 7, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Railroads—Par. 62.**
A railroad is negligent in slowly backing a string of box cars over a little used crossing without an alarm whistle, bell or other notice of its approach.

2. **Louisiana Digest—Railroads—Par. 63, 65; Automobiles—Par. 5.**

One who drives his automobile at night with his lights burning over a railroad crossing, which was further illuminated by incandescents lights, should have seen and heard a string of box cars backing towards him at the rate of five or six miles an hour; his negligence in not seeing or hearing the train constitutes the principal cause of the accident and contributory negligence barring his recovery for the resulting damage.

Appeal from the Parish of East Baton Rouge. Hon. George K. Favrot, Judge.

Action by James I. Walker against Louisiana Railway & Navigation Company.

There was judgment for plaintiff and plaintiff and defendant both appealed.

Judgment reversed.

R. F. Wlker and Fred G. Benton, of Baton Rouge, attorneys for plaintiff, appellant.

Wise, Randolph, Rendal & Freyer, of Shreveport, and Laycock, Borron & Laycock, of Baton Rouge, attorneys for defendant, appellant.

ELLIOTT, J. Suit to recover the value of an automobile destroyed by a train while being backed over a frequently used private crossing, also damages on account of personal injuries received in the collision, and other losses.

An automobile, sedan type, belonging to and driven by James K. Walker, was destroyed by a train while being backed by

Louisiana aRilway & Navigation Co., over a railroad crossing leading into the plant of the Standard Oil Co., through the suburb Dixie, on the night of December 4, 1926, at about 10:30 p. m.

The plaintiff was badly shaken up and some of his clothing ruined, but aside from a severe nervous shock he was not seriously injured.

It was a dark night but not cloudy. The plaintiff, accompanied by three young ladies, one of whom was sitting with him on the front seat, the other two with a young man named Heath occupying the back seat, drove across defendant's main and switch tracks, and entered the gate leading into the premises of the Standard Oil Co. Young Heath got out after getting about ten feet inside the gate, leaving plaintiff with the young ladies in the car. The plaintiff, so he says, turned around without stopping, drove out of the gate, starting back over the crossing by which he had entered, but just as he got on the crossing he was struck by a box car, being backed over the crossing at the end of the train. The automobile was rolled and crushed under the box car for a distance which some of the witnesses estimate at 100 feet. How it came to pass that plaintiff and his companions were not all killed seems almost providential.

Plaintiff claims that the collision was due entirely to the fault and negligence of the defendant. That defendant was backing its train in the night time over an unlighted and unguarded crossing, without any noise to give warning of its approach.

The defendant in its answer denies that it was negligent. It alleges that the collision was due to the negligence of the plaintiff. Alleges that the crossing was guarded by its brakeman with a lighted lantern in his hand. That the crossing was, moreover, lit up with electric lights in such a way that plaintiff should have seen and heeded the warning of its brakeman at the crossing, and should have seen and heeded the backing train, and not entered on the track. That plaintiff's negligence was the proximate cause of the collision.

The District Judge rendered judgment in plaintiff's favor for $773.20, the value of his automobile, but rejected his demand for personal injuries and other losses.

The plaintiff and defendant both appealed.

The evidence shows that there was no light on the end of the box car which was being backed, nor alarm by whistle, bell or otherwise notice of its approach. The crossing was not a municipal street nor public highway; but it was used by a great many people in the employ of the Standard Oil Co. just before and after shifts. A shift was due to take place at 11 o'clock p. m., and the workmen were beginning to arrive at the time plaintiff came; therefore, all reasonable precaution should have been taken by the train crew at the time stated.

Plaintiff brought young Heath to his work in the plant. At the time stated the crew should have had a light at the forward end of the backing box car; the bell should have been ringing and the whistle

should have sounded notice of its approach at the crossing.

The Supreme Court in Ortalano vs. R. R,. 109 La. 902, 33 South. 9114, considered the care which should be exercised by a railroad at a private crossing used perhaps considerably less than the one in question; but we have concluded that the case does not depend on the neglect of the railroad company in the matter mentioned. The evidence shows that the plaintiff himself was heedless and negligent in not looking, stopping and listening, and in not seeing the train with box car leading being backed over a crossing not over 25 or 30 feet distant in his front under bright and glaring lights, under which he could and should have seen it for nearly 100 feet, before it came to the crossing.

The train was being backed slowly, the engineer says, five or six miles an hour. There was some difference of opinion about that, but all the witnesses agree that it was backing very slowly at the time.

The Standard Oil Co. not only maintained a watchman at the crossing day and night, but also erected and maintains over it at night two electric lights, each of 200-wat intensity. These lights are .at the top of poles, one standing about 18 and the other about 20 feet above the ground. One of them on the east, the other on the west side of the crossing. The one on the east is about 30 feet east of the main line and about 10 feet east of the switch track on which the train was backing. The other is about 30 feet west on the main line, both on the north side

of but within a few feet of the crossing.

The Standard Oil Co. also maintains another 60-watt light on a booth occupied by the watchman. This light is about 60 feet west of the crossing, just inside of the gate, and also reflects some light over the space in the vicinity of the crossing.

The plaintiff was one of the employees of the Standard Oil Co. and familiar with the crossing, the watch and light over it. The Standard Oil watchman usually remained near the gate. He attended to the gate, kept out those who had no right to enter, and at train times flagged the crossing.

These lights and a watchman are kept at the crossing by the Standard Oil Co. for the protection of its employees. The railroad company has nothing to do with the Standard Oil Co. watchman, nor with the lights maintained there; but it has the right to avail itself of the lights to the extent that the plaintiff was negligent in not having seen the train as it was being backed toward the crossing under the glare of the lights, and in not having observed defendant's brakeman stationed there at the time.

Plaintiff contends that defendant did not have the crossing guarded. He says that he did not see the brakeman there, and several witnesses called by him also testify that they did not see him there at the time of the collision, but we think the preponderance of and the most dependable evidence shows that Joe Martin, defendant's brakeman, not living at the time of the trial, was on the crossing at the time of the collision, with a lighted lantern in his hand.

Messrs. Callahan and Butler, employees of the Standard Oil Co., support defendant's contention in this respect. According to the evidence, Brakeman Joe Martin stepped off the train at the crossing, as it came south over the main line, and walked to the switch crossing over which the train was to be backed, with a lighted lantern in his hand. Mr. Callahan says he was too excited by the collision about to take place to notice whether Joe Martin had a lighted lantern in his hand at the time the plaintiff was about to be struck; but he had noticed him there with a lighted lantern in his hand just a little while or a moment before the occurrence.

Butler did not see the brakeman on the crossing at the moment of the collision, but he saw him get off the train as it pulled down going south over the main line, and walk toward the switch crossing only a few feet away, with a lighted lantern in his hand. In a fef minutes after seeing the brakeman walk toward it, he saw the backing box car and plaintiff's automobile in the act of colliding in the middle of the crossing. He did not notice the brakeman any more after seeing him get off the train and walk toward the switch crossing; but Butler, seeing the collision, ran along by the side of the backing train which was rolling the automobile before it until it was stopped. When it stopped he was at the place where it stopped, and he then noticed that the brakeman was also there with a lighted lantern in his hand.

The conductor of the train testifies that he saw Brakeman Martin on the crossing just before the collision, flagging traffic.

A brakeman named Lewis also testifies that he saw Brakeman Martin on the crossing with a lighted lantern in his hand, holding it out against traffic, and saw at the same time an automobile approaching. Another brakeman, Joe Nicks, testifies in effect to the same.

Several witnesses, testifying for the plaintiff, that they did not see the brakeman, does not negative this positive testimony on the part of those who did see him. A witness, whose testimony is quoted by the plaintiff, says he saw the collision at a distance of only a few feet away, and that he did not see Brakeman Martin there; also admits that he did not see plaintiff's automobile nor the lights of same as it came toward the crossing; and explains that it was because, at that time, he was too far south of the road. Meaning south of or below the road leading to the crossing.

A sedan is a closed car and it is natural that a man looking suddenly at a closed automobile, full of people about to be crushed under a backing box car, cannot be expected to notice people on the outside standing by. Joe Martin had of course stepped aside just before the collision to keep from being run over; and if he stepped below or south of the crossing on the west side, the box car was in between him and the witness in question.

Particularly is such evidence not overcome by the testimony of Messrs. Callahan and Butler. Not a witness called by either plaintiff or defendant claims to have seen the brakeman, Martin, at any place before the collision, except at the

crossing; consequently we cannot hold that Brakeman Martin had absented himself from the crossing at the time of the collision.

Plaintiff claims that Mr. Callahan, the Standard Oil watchman, might have stopped him at the gate. Mr. Callahan was not in defendant's employ; therefore defendant cannot be blamed for his negligence in that respect, if any there was on his part. Mr. Callahan testifies that he was standing near the gate and that when plaintiff drove in and young Heath got out, he expected plaintiff to stop and speak to him; but plaintiff, instead of doing so, turned around and drove back toward the crossing. That he hollered at him, but that plaintiff kept on until he was struck. The plaintiff admits that he heard somebody holler, and says that as soon as he did he looked up and the backing train was right on him and struck him before he could get out of the way.

The evidence shows that his automobile was in the middle of the track at the time it was struck. As for not being stopped by Joe Martin, plaintiff crossed the track without stopping on his way to the gate. He says he did not see the brakeman, but the evidence shows that the brakeman was there with a lighted lantern in his hand at the time; and that he was also there as plaintiff approached it on his return, as he was not seen by anybody anywhere else. But as plaintiff approached on his return the train was also approaching him on the crossing; if the brakeman had not stepped aside he would have been run over. The brakeman standing on or near the lighted crossing with a lighted lantern in his hand, holding it out against traffic, was a sufficient warning.

A "Stop Sign" was also posted at the crossing in plain view.

Plaintiff says he was driving not faster than eight or ten miles an hour; had his automobile under such control that he could have stopped at once if he had seen danger. That as he came out of the gate and started back toward the crossing, he glanced to the right and left up and down the track, and listened, but did not see nor hear the train. His view in front was unobstructed. It was unobstructed north of the crossing for nearly 30 feet, at which distance the other end of the train, part of which had been stopped on the main line above the crossing, while the other half, with the engine having gone south of it, was being backed over the crossing on the switch track. Plaintiff's view south was unobstructed for several hundred feet in the direction from which the train was being backed. The headlights on plaintiff's automobile were burning as he drove toward the crossing and these lights further illuminated it as he came near, shedding considerable light, not only before him but on each side of him. He should have seen and could not help seeing and hearing the train, if he had looked south, and was also bound to hear it, because it was not over 50 or 60 feet away as he started back from the gate. And it was coming closer and closer to the crossing, and when he came to within ten or fifteen feet of the crossing the train was also only ten or fifteen feet distant from the same place. With the crossing lit up in the way stated, the railroad must have been visible for about 100

feet south of the crossing and nobody could have failed to see the backing train with a box car leading as it came north toward the crossing and under the glare of the reflecting lights, if he had looked to see if anything was approaching from that direction.

We conclude that plaintiff must be charged with seeing an object that he could not help but see, unless he had his eyes closed, and also with hearing that which he could not help hearing, if giving the slightest heed, and that he went on the crossing in the face of an apparent and obvious danger, taking the risk. Lincks vs. R. R., 143 La. 445, 78 South. 730, is similar in some respects, yet not controlling, because in that case a timely warning was not given; the warning came too late; therefore, the reason given for that decision does not apply. In Kraemer vs. R. R., 144 La. 57, 80 South. 198, the facts appear to be similar in some respects, yet the important facts are very different and the reasons for the decision are not adapted to the facts and circumstances of the present case. Draiss vs. Payne, 158 La. 652 and 653, 104 South. 487, is also based on different facts and circumstances and is therefore not controlling. In that case a train was being backed in the night time over a frequently used crossing without any precaution or care taken to give notice of the train's approach. Here there was a brakeman on the crossing with a lighted lantern in his hand and the crossing was lit up in such a way that plaintiff could not help seeing the slow backing train in ample time to stop. The reasons which governed in the following cases are applicable:

Horlsch vs. R. R., 44 La. Ann. 280, pp. 285, 10 South. 628, et seq.

Tatum vs. R. R., 124 La. 922, 50 South. 796.

Cook vs. R. R., 130 La. 917, p. 918, 58 South. 767.

Perrin vs. R. R., 140 La. 818, p. 819, 74 South. 160.

Perrin vs. N. O. Terminal Co., 140 La. 818, p. 819, 74 South. 160.

Tucker vs. R. R., 141 La. 1096, 76 South. 212.

Nolan vs. R. R., 145 La. 483 and 484, 82 South. 590.

Young vs R. R., 153 La. 129 and 130, 95 South. 511.

Consolidated Co. vs. R. R., 155 La. 233 and 234, 99 South. 203.

Gibbins vs. N. O. Terminal Co., 159 La. 347 and 348, 105 South. 367.

The preponderance of the evidence shows that defendant was negligent, and that his negligence directly contributed to the collision and was the principal cause of the occurrence. He cannot recover on account of his own negligence.

The judgment appealed from is therefore erroneous and must be set aside.

The judgment appealed from herein is therefore annulled, avoided and set aside, and the demand of the plaintiff is rejected at his cost in both courts.