On May 15, 1946, at approximately 9:00 a.m., James Hutchinson, the petitioner herein, was travelling in an easterly direction on a road running parallel with the defendant railroad about one-half mile east of the Town of Duson, in the Parish of Lafayette. At that point there is a sharp turn to the south to another road running north and south, which intersects the aforesaid railroad. Petitioner negotiated this turn to the south, and as he approached the railroad tracks he failed to perceive an approaching freight train of defendant, before he was within a few feet (some 10 or 12 feet) from said tracks. He thereupon applied his brakes, but could not prevent the front wheels of his car from going over the north rail of said tracks. In desperation he apparently tried to place his automobile in reverse gear, but in doing so, killed his motor, and he thereupon jumped out of his car and ran, and just as he had gotten away from the scene the freight train collided with his automobile and completely demolished it. It is shown that at the time of the accident, it was raining and that visibility was very poor.
Petitioner alleges that prior to making the turn to the south, he had been travelling at about 25 miles per hour, and that after making the turn, he slowed down to about 15 miles per hour; that in order to reach the crossing he had to cross a narrow bridge, which necessitated his slowing down and that at the intersection the view to the east and west was obstructed by the crossing stop signs, telegraph poles and weeds and bushes; that no warning signal was given by the approaching train and that it was impossible to see the train approaching until arriving at a point some 10 or 12 feet from the tracks; that prior to arriving at that point, he looked on both sides in an attempt to see whether a train was approaching, but did not see any signs thereof until his attention was drawn by the bright headlights of the train within a few feet (10 or 12 feet) of the tracks, at which time he applied his brakes as aforesaid.
He attributes the accident to the gross negligence of the defendant railroad and its employees in failing to provide a safe crossing and in failing to give a signal of the approaching train, considering the surrounding circumstances, especially in failing to blow a signal 300 yards from the crossing, contending that no signal whatsoever was given until after he found himself upon the track, at which time some few blasts of the whistle were blown. He contends that he was absolutely free of any negligence since he was driving in a prudent and careful manner at a reasonable rate of speed, and was keeping a proper lookout. In the alternative, if the court should find that he was guilty of negligence, he contends that the defendant should be held liable for the accident on the theory that the railroad employees had the last clear chance of avoiding the accident and failed to do so because they were not keeping a proper lookout.
The defendant filed an exception of no cause or right of action, which was overruled, and thereafter filed an answer in which the material allegations of the plaintiff's *Page 141 
petition are denied, and in which it is expressly averred that the crossing in question was in good condition and properly maintained and that the regulation crossing whistle signal was sounded by the engine of said train when the engine was approximately 400 feet from the crossing and that the engine bell was ringing continually from the time said engine was approximately 400 feet west of the crossing; that all due and proper signals were given of the said crossing to warn on coming traffic and that the headlights of the engine were burning and that the train was equipped with all proper equipment for proper operation. The defendant further alleges that the train consisted of 23 loaded freight cars and that the engineer and fireman had no way of anticipating that the driver of the plaintiff's automobile, on approaching the crossing, would disregard the law and ordinary principles of safety, and would fail to stop before crossing the said tracks; that when plaintiff's car was seen on the tracks the engineer immediately sounded several sharp stop signals and applied the brakes immediately, but was unable to stop until after colliding with plaintiff's automobile. Defendant therefore contends that the accident was caused by the gross negligence of plaintiff (a) in failing to stop, look or listen for approaching trains; (b) in failing to maintain a proper lookout; (c) in driving at an excessive rate of speed under the circumstances; (d) in failing to have his car under proper control; (e) in failing to heed the signal warnings of the approaching train; (f) in failing to use reasonable care in approaching the crossing as required by the weather conditions; (g) in failing to see the approaching train, which was plainly visible long before the plaintiff drove on the tracks; and, (h) in driving on the tracks, or in such proximity thereof, that he could not stop so as to avoid coming on the tracks.
For these reasons they allege that the contributory negligence of the plaintiff bars his recovery and his suit should be dismissed at his costs.
After hearing the case, the trial judge, for written reasons assigned, found that the plaintiff was guilty of negligence which was the proximate cause of the accident, and therefore rendered judgment dismissing his suit at his costs. Plaintiff has appealed.
The only eyewitness to the accident, aside from the train crew, was the plaintiff himself, who testified in accordance with the allegations of his petition set forth hereinabove. He admits that the weather rendered visibility very poor and that as he negotiated the turn to cross the tracks, he drove at a rate of 15 miles per hour and did not attempt to stop until he was within some 10 or 12 feet of the tracks; that at that time he noticed the approaching train because of its bright headlights, and he thereupon applied his brakes, but the front wheels of his car went over the north rail before he could stop; that at that time the train blew several blasts and he thereupon attempted to put his car in reverse gear, and failing to do so, jumped out of the car and ran away. He testifies that he never heard any warning signals whatsoever until after the car had gone over the rail and that because of the presence at the crossing of the stop sign, a line of telegraph poles, weeds and bushes, the train could not be seen until he arrived within some 10 or 12 feet of the tracks. He states that his car windows were up, but that the window on his right hand side, from which the train was approaching, had a broken place in it some 6 inches square at the top and next to the windshield. Plaintiff admits that he was well acquainted with this crossing, having travelled it many times before.
In corroboration of his testimony as to the lack of visibility at the crossing, and as to the failure of the train to give signals as required by law, the plaintiff introduced several witnesses who reside near the tracks and near the scene of the accident. These witnesses all bore out plaintiff's contentions with reference to the condition of the crossing and also testified that they failed to hear any signals, except a few blasts, referred to by plaintiff, immediately prior to the collision. On the other hand, the engineer, fireman, and another employee of the train testified that the whistle crossing signal was given at the' proper place, some 300 yards from the crossing, and that the bell was rung continually from *Page 142 
that point, in addition to the blasts referred to by plaintiff. They testified also that the headlights of the train were burning and that immediately upon observing the plaintiff's car on the tracks, the brakes were applied, but the train could not be stopped in time to avoid the collision.
[1] The trial judge, in his written opinion, states that he was impressed by the positive testimony of these railroad employees, and with their demeanor and straightforward manner in contrast to the negative testimony of the plaintiff and his witnesses in so far as the warning signals are concerned. He concluded that the warning signals were given and that the train crew took every precaution possible in the usual and customary manner in order to warn traffic of the train as it neared the grade crossing, that if plaintiff had heeded the signals, he would have slowed down and stopped before reaching the tracks. In commenting on the negative testimony of plaintiff's witnesses, who reside near the tracks, Judge Fruge very aptly quoted from the case of Handy v. New Orleans Public Service, 10 La. App. 72, 120 So. 271, 272, as follows: "People not engaged in the operation of trains but living near crossings over which fast trains daily pass, become so accustomed to the whistling, and the ringing of the bell, that ordinarily, unless purposely listening, they pay no attention to such things and do not consciously hear them."
[2] Under these facts, the trial judge concluded that the decided preponderance of the testimony disproves the charges of negligence to the train-crewmen. We fully agree with him.
[3] In passing on the factual issues raised by defendant, the lower court said: "The statutory law of Louisiana places a definite obligation on the driver of a vehicle when approaching a railroad crossing: Act No. 286 of 1938, Sec. 3, Rule 17 (a), Dart Statutes, § 5222: "It shall be the duty and obligation of every person owning, driving, operating, or causing or permitting a vehicle to be so driven or operated, when approaching a grade crossing of a public street, road or highway with any steam, electric, street, interurban or other railroad or tramway, operated upon fixed rails or permanent track, to, upon his own responsibility bring such vehicle to a full and complete stop at such a place, in such a manner and for a sufficient period of time to enable the driver or operator thereof to observe the approach of trains or cars thereon, by looking up and down said track in both directions and by listening therefor, and before proceeding thereon or thereover. In the event it is impossible so to do, then such persons shall proceed only with the greatest caution and at their peril."
Act No. 12 of 1924, Sec. 3, Dart Statutes, § 8138: "It shall be unlawful for any person to drive or propel any automobile or automobile truck or other motor driven vehicle upon any railroad track at a public highway or municipal street intersecting such railroad at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for train; * * *. In the trial of all actions to recover personal injury or property damages sustained by any driver of such motor driven vehicles by collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions of this act, the question of whether or not the said violation was the sole or proximate cause of the accident and injury shall be for the jury to determine regardless of the penalizing feature of this act. The violation of this act shall not affect recovery for damages and the question of negligence or the violation of this act shall be left to the jury; and the contributory negligence statutes of Louisiana shall apply to these cases as in other cases of negligence." (Acts 1924, No. 12, § 3.).
Illinois Central R. Co. v. Leichner, 5 Cir., 1927,19 F.2d 118, 120. The Court said: "Controlling Louisiana decisions show that the law of that state exacts from the driver of an automobile who approaches a railroad crossing, where the view along the tracks from a direction from which a train may come is obstructed, the duty to stop, look, and listen before driving upon the crossing, or so near thereto as to be endangered by a passing train; that the greater the difficulty of seeing, or hearing a train as he approaches the crossing, the greater the *Page 143 
caution the law imposes upon him to use his senses of sight or hearing, one or both, when and where a reasonable and practicable use thereof would enable him to learn of the presence or absence of danger at the crossing; and that, though the operator of the railroad is chargeable with negligence which was a proximate cause of any injury to the traveler at the crossing, a right to recover damages for that injury is barred if the traveler's negligent failure to do all that care and prudence would indicate to avoid injury was a proximate contributing cause of the injury sustained. Perrin v. New Orleans Terminal Co., 140 La. 818, 74 So. 160; Tucker v. Illinois Central R. Co., 141 La. 1096, 76 So. 212; Callery v. Morgan's Louisiana, etc., Co. 139 La. 763, 72 So. 222; Leopold v. Texas P. R. Co., 144 La. 1000, 81 So. 602."
Perrin v. New Orleans Terminal Co., 140 La. 818, 74 So. 160, 161. The Court said:
"Even if the weeds had obstructed plaintiff's view, as he claims, his duty to stop, look, and listen was the more incumbent upon him. We say in Blackwell v. Railroad Co., 47 La. Ann. [268], 270, 16 So. [818], 819, 49 Am.St.Rep. 371:
" 'These obstructions, while they are not to be lost sight of in considering the question of responsibility, certainly should have suggested caution to travelers about crossing the tracks.'
"And in Barnhill v. Railway Co., 109 La. 43, 33 So. 63, we say:
" 'The greater the difficulty of seeing and hearing the train as he approaches the crossing, the greater caution the law imposes upon the traveler.'
" 'The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury, and the greater the danger the greater the care that must be exercised to avoid it, as where, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary.' "
Louisiana Arkansas R. Co. v. Jackson, 5 Cir., 1938,95 F.2d 369, 372. "When we come, to that, we think it perfectly plain that as to the driver of the car, defendant should have had an instructed verdict; for, on a dark and foggy morning, with the windows of his car all tightly closed, he drove recklessly onto defendant's tracks, without stopping as he was by law required * * * to do, while because of the shut windows of the car, and the fog and rain and dark, he could neither hear nor see the signals evidencing the approach of the train. Baltimore O. R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167, 56 A.L.R. 645; as interpreted and approved in Pokora v. Wabash R. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049; Northern Pacific Co. v. Bacon, 9 Cir., 91 F.2d 173; Great Northern R. Co. v. Taulbee, 9 Cir., 92 F.2d 20; Brown v. Southern R. Co. 5 Cir., 61 F.2d 399."
"It is clear to this Court that in view of the above authorities applied to the facts in this case that plaintiff is precluded from recovering any damages because of his own negligence."
[4] We cannot see wherein the trial judge committed any error in his finding that plaintiff was guilty of negligence, and with reference to the last clear chance doctrine invoked by plaintiff, we believe that the testimony, especially that of the engineer, preponderates to the effect that the train was in good condition, and that all parts thereof including the brakes, were properly operating. It is shown that the train stopped at Crowley before the accident, and had slowed down in Rayne and in Duson, and that at these times the brakes worked properly. It is further shown that the train was traveling at about 40 miles an hour and that it consisted of 23 loaded cars, and that the automobile was first sighted on the tracks at a distance of only 3 or 4 car lengths, and it seems obvious under these circumstances, that the train could not be stopped in time to avoid the collision. We therefore are of the opinion that the last clear chance doctrine cannot be applied herein.
Questions of fact only are involved in this case. After a careful reading of the record we have no hesitancy in concluding *Page 144 
that the lower court correctly resolved the same and applied the pertinent law thereto.
For the reasons assigned, the judgment appealed from is affirmed.