This is a suit for damages arising out of a collision occurred on February 17, 1945, at about five o'clock in the afternoon at a point in an intersection between a highway leading east and west and being a main highway connecting the cities of Alexandria and Lake Charles and another highway running south and north and leading to the military reservation at North Camp Polk in Vernon Parish. The vehicles involved in the collision were a bus of the Southern Bus Lines, Inc., which was travelling west towards Leesville, and a Plymouth automobile belonging to and being driven by Elmer Bailey, one of the plaintiffs in the suit. There are two other plaintiffs, Edgar Droddy and Mitchell Droddy who with two other passengers, occupied the car with Bailey. The two Droddys appear in the suit on the guest theory which might well save them from a plea of contributory negligence that could be successfully presented against Bailey, the owner and driver of the car. They were severely injured, especially Edgar Droddy and their demand for damages is limited to the personal injuries which they sustained with incidental expenses. The demand of Edgar Droddy including hospital and medical expenses is for $20,000, that of Mitchell Droddy $7,125 and that of Elmer Bailey which includes the loss of his automobile as well as minor physical injuries and loss of wages, $1,756.50.
As already stated the bus was going west and the car was travelling north, as is alleged in the petition of the plaintiffs and in which it is further alleged that among the proximate causes of the collision were, (1) the fast and excessive rate of speed at which the bus was going for more than 600 feet before reaching the point of collision, (2) the failure of the driver to slow the bus down and have the *Page 763 
same under control so as to be able to stop within 5 feet at any time after he had entered the intersection, (3) his failure to keep a vigilant look-out for vehicles in and about the intersection after he came within 500 feet of it, and, (4) his failure to stop the bus after he had seen or should have seen the Bailey car about to enter the intersection.
In their petition plaintiffs also described the intersection in detail, alleging that a very large sign was posted some 500 feet east on the north side of the north and south highway to give warning to drivers approaching the intersection from the east of the junction and they also describe a certain small house situated somewhere on the southeast corner of the intersection. Although they do not seem to charge specifically as they did on the other matters, that the bus driver was negligent in failing to observe the warning sign and, although it is strongly contended also that this small house created an obstruction on the southeast corner of the intersection and should have called for greater care and caution on his part, they do not charge failure in that respect as a particular act of negligence. Testimony was freely admitted with regard to these matters however and there seems to have been no objection to it being considered.
The Fidelity Casualty Company which carried public liability insurance on the bus is made co-defendant with the Southern Bus Lines, Inc., and in a joint answer filed by them, after admitting those allegations which they could safely admit, they generally deny all other allegations on which liability against them could be founded. Further answering they set out their version of how this accident occurred, alleging, first, that the road on which the Bailey car was going is a less travelled road than the main paved highway leading from Alexandria to Leesville and therefore the bus had the right of way. They further allege that at the time of the accident there were large stop signs placed at the intersection against traffic on the north and south intersecting road. They allege that the bus driver approached the intersection at a reasonable rate of speed of 30 to 35 miles an hour, that he blew his horn as he neared it, as was his custom, that he saw the Bailey car approaching from his left, both vehicles being in clear and open view of each other and he also observed the Bailey car slowing down as if to stop in observance of the stop sign which faced it. They allege that under the circumstances the bus driver proceeded to go across the intersection in a normal manner and as he did so, plaintiff's car speeded up. They aver that when it became apparent to the bus driver that the Bailey car was not going to stop, he applied his brakes and pulled over to his right as far as possible in order to avoid a collision but it was then too late. Defendants disclaim any negligence on the part of the bus driver and aver especially that the proximate cause of the collision was the negligence of Bailey in failing to see the bus which was in plain and open view and in failing to observe the stop sign at the intersection.
In the alternative defendants plead contributory negligence on the part of Bailey and that the other two plaintiffs were likewise contributorily negligent in failing to have observed the bus and properly warn the driver Bailey. As another alternative defendants plead the doctrine of joint enterprise among all three of the plaintiffs as a bar to their recovery.
After trial in the lower court there was judgment in favor of defendants dismissing the plaintiffs' suit and they have taken this appeal.
The following facts are not seriously disputed: The bus was travelling west on a main highway which enjoys the right of way over the road which the Bailey car was travelling toward the north, and also there were signs, one east of the north and south highway warning traffic going west of the junction of the two roads and also stop signs placed about the intersection and particularly one facing traffic going north as it approached the intersection. It is not disputed that the collision took place somewhere in the northwest quarter of the intersection and that the Bailey car collided with the bus at that point because of the driver's effort to pass ahead of it by having turned to his left. It is *Page 764 
not disputed also that the automobile continued to the west after having collided with the bus and came to a stop some 50 feet from the point of collision; that the bus continued in the same direction it was going, towards the west, and travelled off the paved slab of the highway a considerable distance and came to rest partly in a ditch at a point approximately 150 feet from the point of collision. It is generally agreed also that it had been raining before, but not at the moment of the accident.
The seriously disputed points in the case, as we view them, are with regard to, the rate of speed at which the respective vehicles were travelling; whether this small house on the southeast corner of the intersection formed an obstruction to the view of either driver which called for greater attention on his part in approaching the intersection and finally whether either driver made any diligent effort in time just before entering the intersection to try to avoid the collision either by stopping or having his vehicle under proper control.
[1] Taking up the question of the speed of the vehicles we find that the preponderance of the evidence shows that neither was travelling at an excessive rate and that could hardly be said to have been the proximate cause of the accident on the part of either. The only testimony to the effect that the bus was going very fast comes from the plaintiffs themselves and this is denied by the bus driver as well as two of the passengers who testified in the case and another witness who viewed the accident.
R.R. Hyatt was a witness for the defendants and he seems to be the only eye witness besides the parties who were involved in it. He was employed by a construction company which was sodding the shoulders on these roads and acted as a guard to keep military traffic off the unfinished end of the north and south road. Incidentally the small house which has been referred to was a small shelter house placed there for his use in bad weather. He was standing near it, says that he saw the two vehicles approaching the intersection and that in his honest opinion they were both running about 35 miles per hour.
In an effort to show the excessive speed at which plaintiffs claim the bus was travelling, their counsel had a number of witnesses to testify concerning the distance which it travelled after the collision, a point which really is not seriously disputed except with regard to a few feet which after all, would not make any difference in the result to be reached. But assuming that it did travel all of 150 feet after the impact, we believe the driver offers a reasonable explanation why that happened. He says that the collision naturally had the effect of throwing him off balance and when he saw that the right wheels of the bus were leaving the paved portion of the highway and getting onto the soft shoulder, he realized that it would be more dangerous to apply his brakes suddenly and violently to bring the bus to a stop so he kept it moving until he felt sure of his balance and that it could be stopped without danger to the passengers he had on board. As far as the car is concerned, we would say that most probably the reason it carried a distance of some 50 feet from the point of collision was not so much because of the force of the impact but because the driver had turned to his left and most probably it was carried by its own momentum.
Therefore we eliminate the charge of negligence made against the driver of the bus on the ground of the fast and excessive rate of speed at which he was travelling before and after reaching the intersection.
[2] Concerning the obstruction at the southeast corner created by the presence of the little house which was referred to, we can't quite understand how that small construction could have formed an obstacle to the view of the driver of either vehicle engaged in this collision in that broad open country in which they were travelling. It is described in plaintiffs' petition as a building about 10 feet high but according to the witness Hyatt, the man who used it as a shelter from bad weather, it was actually about 6 feet by 8 feet. How any construction of that size on the highway *Page 765 
as well as any signs which may have been there on either corner could have formed an obstruction to the entire view of approaching traffic, we are unable to conceive. As a matter of fact some of the witnesses in both vehicles testified as to the clear view which the drivers of each had of the other for a considerable distance from the intersection and we are unable to assign the presence of either that small building or the signs as reasons calling for greater precaution on the part of the driver of a car approaching that intersection either from the east or from the south.
It seems then that the question of negligence will have to be determined upon the relative duties of the respective drivers on both these highways as they approached the intersection.
To begin with it is conceded that the bus was travelling on the right of way road as that road is a main travelled highway and the road on which the Bailey car was travelling apparently is an inferior highway used principally for servicing traffic going to and from the military reservation known as North Camp Polk. Besides, under a provision of the State Highway Regulatory Act, Rule 11(a) under Sec. 3, Act 286 of 1938, the bus driver enjoyed the right of way by reason of the fact that he was approaching the intersection to the right of the driver of the Bailey car. Under our appreciation of the testimony also the driver of the bus entered the intersection if not before the Bailey car did, at least at the same time.
Looking at the relative importance of both highways from the standpoint of the signs posted all around it, we would say that it is the highway running east and west which appears to be of more importance as the sign facing traffic approaching from the east simply called attention to the fact that there was a junction ahead, whereas the sign to traffic approaching from the west was one warning traffic coming from that direction to stop entirely.
[3-5] From this it results that there was a greater duty imposed upon the driver of the Bailey car as he approached this intersection and indeed he seems to have realized that fact as he and his co-plaintiffs alleged in their petition, that as he approached the intersection in a careful manner and at a slow rate of speed he came "almost to stop on reaching it." That in his own allegation by which he is judicially bound and although realizing later on that probably the effect of that allegation might militate against him, there appeared a little conflict in the testimony as to whether he did slow down to such an extent that the driver of the bus could have understood that he intended to wait until the bus had crossed over. At any rate, we do not find that he was coming at an alarming rate of speed which would have indicated anything other to the bus driver than that he intended to observe and yield the right of way and no matter what might be decided with regard to the conduct of the bus driver in approaching and entering the intersection, there is no doubt but that Bailey himself was negligent in not yielding to the bus the right of way he had and he personally is barred from recovery.
To determine the question of liability towards the other two plaintiffs it becomes necessary to go a little further and consider whether Bailey's negligence alone was the cause of the accident, for if the bus driver also was negligent there would be liability on the part of the defendants as we don't think that these two other parties had a chance to warn Bailey in time to avoid the accident and neither do we believe that there is any merit in the plea of the defendants that the occupants of the Bailey car were engaged in a joint enterprise.
[6, 7] The driver of the bus testifies as to the rate of speed at which he was going, that as he approached the intersection he slowed down, as he had to, looked and saw the Bailey car approaching and entered the intersection only after he saw that it had slowed down, by which act of the driver, he understood that he was going to wait and let the bus go by. After he had entered he says was when Bailey sped up his car and naturally that meant that he was going to try to cross also. He then applied his brakes but it was too late and as *Page 766 
Bailey tried to turn to his left in order to pass ahead of him the collision occurred. The driver of the bus is corroborated in most of his testimony not only by the two passengers who testified in the case but also by the witness, Hyatt. We do not know what more the driver of the bus was called on to do and find ourselves unable to agree with counsel for the plaintiffs that he was negligent in the manner in which he approached and entered this intersection. Had the Bailey car been going at a high rate of speed or had the driver been doing something unusual in the operation of the car which, with the clear vision he had of it, the bus driver might have been led to believe that he would not stop as they both were about to enter, then we would say that negligence could be charged to the bus driver under the rule laid down in Blashfield, Cyclopedia of Law and Practice, Vol. 2, § 1032, at p. 216, and which is stated as follows: "An automobilist, with knowledge of the location of a stop sign, has the right to rely when crossing the intersection, on the assumption that any one approaching will observe it, and similarly a traveler on a boulevard or arterial highway has a right to expect an operator of a motor vehicle on an intersecting street to stop before entering thereon, and, with that expectation in mind, the operator of the automobile on the favored street can proceed forward while the other traveler on the intersecting street stops at the sign. If, however, the driver on the favored street sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, he may himself be under a duty of stopping to avoid a collision at the crossing, at the risk of having his recovery defeated by reason of his being contributorily negligent." The rule was cited in the case of Termini v. Ætna Life Insurance Co., La. App., 19 So.2d 286 where the facts warranted its application. In the present case the view was open to both drivers and as the bus driver could see nothing unusual in the conduct of the driver of the Bailey car and, as a matter of fact, the driver of that car seemed to be doing exactly what the bus driver could expect him to do, that is slow down and yield the right of way, then that part of the rule on which it was held that the plaintiffs could recover in the Termini case does not apply.
The trial judge did not assign reasons for judgment and we do not know on what ground he held in favor of the defendants. His decision in their favor implies however that he concluded the bus driver was not guilty of negligence. We believe that in this conclusion he was correct and without manifest error appearing, the judgment has to be affirmed.
Judgment affirmed.