McBRIDE, Judge.
Plaintiff sues the defendants, respectively the owner and operator of an automotive truck, in solido, for damages in the sum of $145.06, sustained by her automobile when it collided with the truck at the intersection formed by Erato and Carondel-et Streets, at about 1 P.M., on August 21, 1952. The petition alleges that the accident occurred through the fault and negligence of Foley, the driver of the truck; defendants answered denying such negligence on Foley’s part. The answer then avers that the truck upon reaching Caron-delet Street was brought to a complete stop; that due to parked vehicles, it was impossible for Foley to view traffic proceeding down Carondelet Street; that he proceeded forward “very slightly” and entered the intersection and again came to a complete stop in order that he could view traffic on Carondelet Street; that while so stopped, the truck was struck on its right front end by plaintiff’s automobile, which was being operated by Donald Clive Hardy as plaintiff’s agent along Carondelet Street without proper lookout. In the alternative, Donald Clive Hardy is charged with negligence “and that as plaintiff’s agent his negligence is imputable to plaintiff,” which bars her recovery. The owner of the truck then asserted a reconventional demand claiming the amount of damages sustained by the truck. This incidental demand was dismissed by the trial judge and has been abandoned by the reconvenor.
The judgment also dismissed Mrs. Hardy’s demand, but she has appealed from that portion of the judgment.
Foley, who was driving on Erato Street, desired to cross Carondelet Street; he brought the truck to a complete stop upon reaching Carondelet Street in obedience to a stop sign which confronted him. He insists that a large truck and automobiles parked at the corner obliterated his view to the right and he could not determine just what the traffic conditions on Caron-delet Street might be. From this unfavorable vantage point he drove the truck a short distance forward until the tip of its front end protruded into the lefthand lane of Carondelet Street, and from this posh: tion he was able to make an observation and appraisal of traffic moving on that street. *75 Foley immediately saw Mrs. Hardy’s automobile coming and he says “I sit and watch the car hit me.” There is no doubt that Mrs. Hardy’s automobile was not more than about 40 feet away from the truck when Foley made the ill-timed second stop.
Counsel for defendants earnestly argue that there was absolutely no negligence on Foley’s part in making such a maneuver and they contend that it was the only prudent thing a motorist could have done under the same circumstances.
It is true this court has said that in such a contingency as existed, the motorist is required to bring his car to a point where his view of the intersection is unobstructed and to make a careful survey of traffic conditions there before attempting a crossing. But by so holding, we certainly did not mean to imply that, when the stop is made and the motorist cannot see, he is within his rights in driving his vehicle out into the intersecting street and onto a lane upon which traffic can be expected to approach in order to investigate into the conditions that might prevail there. This would amount to an absurdity. The operators of motor vehicles at intersecting streets and highways are charged with the duty of keeping a careful lookout for danger and to use that degree of diligence common sense would require and a prudent man would exercise under the circumstances. The pertinent local law governing the situation presented in this case is Ordinance 18,202, C.C.S., New Orleans, § 65, subsection (b), which provides:
“After the driver of a vehicle has stopped in obedience to a stop sign at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway, such driver shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection ' or approaching so closely as to constitute an immediate hazard.”
In King v. Willis, La.App., 75 So.2d 37, 39, a motorist approached an intersection at which a fence obstructed his view of traffic on the intersecting street, and in order to ascertain if any traffic was actually approaching, the motorist decided to drive into the intersecting road and come .to a rolling stop with the result that a collision occurred. We said:
“ * * * we are in full accord with the ultimate conclusions of the trial judge that the proximate cause of the accident was the gross negligence of defendant in driving his vehicle into a heavily travelled roadway when his vision of the traffic moving therein was admittedly obstructed * *
In Perrin v. New Orleans Terminal Co., 140 La. 818, 74 So. 160, 161, the plaintiff drove his automobile upon defendant’s railroad track. It was testified by plaintiff and one of his witnesses they did not see the train because of weeds intervening between the public road and the track. The Court said:
“Even if the weeds had obstructed plaintiff’s view, as he claims, his duty to stop, look, and listen was the more incumbent upon him. * * * ” .
Then, quoting from New York Cent. & H. R. R. Co. v. Maidment, 3 Cir., 168 F. 21, 93 C.C.A. 413, 21 L.R.A.,N.S., 794, the Court said:
“ * * * the law exacts from him a strict performance of the duty to stop, look, and listen before driving upon a railroad crossing where the view is obstructed, and to do so- at a time and place where the stopping and looking and listening will be effective.
* * * ’ . 5>í ífc *
“From where he stopped it was impossible to see up the track, in the direction the west-bound trains would come from, further ’ thán 180 feet. Trees and bushes on the property adjoining defendants’ right of way cut off all sight of the track beyond that short distance. * ‘ *
“But the plaintiff was not without means of crossing in safety. A second *76 man was in the automobile. He could have gone ahead to the east-bound track, or Maidment could have safely-halted the machine there. Instead of doing this, and without sight of the west-bound track, save for the very short distance a swift train would quickly cover, he took the chance of dashing across.” (Italics ours.)
In Barnhill v. Texas & P. Ry. Co., 109 La. 43, 33 So. 63, 65, the Supreme Court said:
“If the box car upon the switch was in close proximity to the crossing, it was Barnhill’s duty to have peered around its side cautiously before venturing onto the main track. Had he done this there was nothing to have prevented his observing the approaching train.”
We do not hold that the duty to look resting upon a motorist at a street intersection is as strict as the duty the above cited cases seem to impose upon one at a railroad crossing, but we do say that what Foley did at the Carondelet Street intersection was not only imprudent but grossly negligent. We believe when he found upon his first stop that his vision was interfered with by conditions at the corner, he could have taken some less daring step to .ascertain whether it was safe to proceed into Carondelet Street.
It is immaterial whether plaintiff’s son could have averted the accident or if there was negligence of any sort on his part, for the good and sufficient reason that Mrs. Hardy placed the automobile with him for safekeeping while she was in Cuba and the accident happened while he was using the automobile going about his own affairs during her absence. Since Mrs. Hardy’s son was operating the car to serve his own interests and was not engaged upon a mission for Mrs. Hardy either as agent or employee, his negligence, if there was any, cannot be imputed to her. Falgout v. Younger, La.App., 192 So. 706; Huguet v. Louisiana Power & Light Co., 196 La. 771, 200 So. 141; Emmco Ins. Co, v. Savoy, La.App., 71 So.2d 573, and the many cases there cited.
There is no contest regarding the amount of plaintiff’s damages, which appear to have been adequately proven.
We do not know the theory upon which the trial judge dismissed the principal demand. We believe that the plaintiff clearly is entitled to a recovery.
For the reasons assigned, that portion of the judgment appealed from which dismisses plaintiff’s suit be and the same is hereby annulled, avoided and reversed, and it is now ordered that the plaintiff have judgment against the defendants, in solido, for the full sum of $145.06, with legal interest from judicial demand; the judgment in all other respects is affirmed; the defendants are condemned to pay the costs of both courts.
Reversed in part; affirmed in part.