86 So.2d 543 (1956)
Civera V. EHTOR
v.
Robert PARISH and
Great American Indemnity Company (Consolidated with No. 20,531).
No. 20532.
Court of Appeal of Louisiana, Orleans.
February 6, 1956.
Rehearing Denied April 23, 1956.
*544 Christovich & Kearney, New Orleans, for defendants and appellants.
Adams & Reese, Pat F. Bass, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
Two vehicles, one a 1953 model Buick sedan and the other a 1950 Chevrolet coach, collided at the intersection of Perdido and Saratoga Streets on June 11, 1950, about 7:45 a. m. Two suits for property damage arose from the accident and these were consolidated for the purposes of trial and a separate judgment was rendered in each. This is one of the suits. Civera V. Ehtor, owner of the Chevrolet, seeks to recover from Robert Parish, the owner and driver of the Buick, and his liability insurance carrier, in solido, the sum of $143.84, representing the damage which the Chevrolet sustained. Seven specific charges of negligence are ascribed to Parish, chief of which is that he was speeding and failed to yield the right of way to the Chevrolet "which had pre-empted the intersection and had practically completely crossed said intersection at the time the collision occurred." The defendants deny that Parish was negligent and then set up that the accident was caused by the fault of the driver of the Chevrolet in several respects. Among other things she is alleged to have failed to maintain proper control of her vehicle, failed to keep a proper lookout, failed to heed a stop sign facing her on Perdido Street at the intersection, failed to notice the approach of the Parish car, and attempted to beat the Parish car across the intersection. Contributory negligence on the part of plaintiff's driver is pleaded in the alternative.
*545 The trial resulted in a judgment in favor of plaintiff as prayed for. Defendants appealed.
Plaintiff's car was being driven by his wife toward the lake on Perdido Street, which is a street designated to accommodate traffic moving in that direction; Parish was traveling in an uptown direction on Saratoga Street, which is also a one-way street. The parties to the suit concede that the intersection formed by the two streets is a blind one. It is also a conceded fact that before entering Saratoga Street Mrs. Ehtor was confronted with an official stop sign.
The trial court in his reasons for judgment found that Mrs. Ehtor stopped before making her entry into Saratoga Street and that she had pre-empted the intersection when her car was struck on its right rear fender by the front of the Parish vehicle. The judge also believed that Parish was "probably" driving at a speed of more than 20 miles per hour. We do not agree with our brother below that there had been a lawful pre-emption of the intersection by Mrs. Ehtor's vehicle and will later state our reasons for so saying. We also differ with the observation that Parish was probably driving at more than 20 miles per hour. He stated on both his direct and cross-examinations: "I could not have been going over 20 miles per hour." No other witnesses testified as to his speed; neither Mrs. Ehtor nor her passenger, Mrs. Favalora, ever saw Parish's car until the very moment of the impact. Therefore, there being no countervailing evidence, we must accept as true the statement of Parish that his speed was not in excess of that permitted by law.
All that Mrs. Favalora said she knew was that Mrs. Ehtor stopped at the sign. Mrs. Ehtor's story is that she made the stop, shifted into low gear, and then started forward and had almost made the crossing of the 22-foot intersection when the crash came. She admits that a building to her right obliterated any view into Saratoga Street in the direction whence Parish came, except for a distance of a car-length, and that within that distance she saw nothing coming. The lady claimed to be well-acquainted with this particular intersection, and it is interesting to note what is her idea of safe driving under the existing circumstances:
"As far as seeing ahead of you, there is a building at the corner that obstructs the view of Saratoga until you get started over. Well, after you give your gas and start over, if you see anyone, you would certainly have to rush to get over, you understand, when you see something coming. But honest to goodness, it came so quick you didn't know where it came from, and it hit me in the rear fender in the back on the right side."
This bit of testimony also deserves honorable mention:
"Q. Before starting from your stopped position, Mrs. Ehtor, and as you say, getting across the intersection, couldn't you have brought your car so that perhaps the front part of it was in Saratoga Street and be able to see all the way down to Charity Hospital?

* * * * * *
"A. You can't unless you put the front part of your car in Saratoga. If they took the front part off of your car, you are in the wrong."
Mrs. Ehtor claims she looked for a second time after starting forward but again she could see no vehicles approaching from her right. She has no idea how far down Saratoga Street she could see on this second look.
Parish says he first saw the Chevrolet when it emerged from Perdido Street and when his car was from 5 to 10 feet away from it. According to him, the Ehtor vehicle made such a sudden and unexpected appearance that he believes Mrs. Ehtor failed to make a stop. He claims he applied his brakes in an effort to avert the crash.
*546 The intersection undoubtedly teems with danger as is to be seen from Mrs. Ehtor's testimony. The narrow width of Saratoga Street (22 feet) enhances the hazard. After reading her testimony, it is a certainty that Mrs. Ehtor knowingly tempted fate in the endeavor to proceed through the intersection. Even if we accept her word for it that she looked a second time she is nonetheless guilty of negligence.
A motorist is under the duty to look at all times and he must see what he can see and in legal contemplation does see and his failure to see what could have been seen had he exercised due diligence does not absolve him from liability for resulting damage to others. There cannot be the remotest doubt that when Mrs. Ehtor attempted her ill-timed crossing, the oncoming Parish automobile was but a short distance away and there was nothing that would have prevented her from seeing it on the second look.
In Hardy v. M. W. Salomon & Son, Inc., La.App., 78 So.2d 73, 76, we discussed what were the duties of the driver of a motor vehicle desiring to cross a street intersection after bringing his vehicle to a complete stop in obedience to a stop sign but finding that his view into the intersecting street is obliterated.
We said:
"We do not hold that the duty to look resting upon a motorist at a street intersection is as strict as the duty the above cited cases seem to impose upon one at a railroad crossing, but we do say that what Foley did at the Carondelet Street intersection was not only imprudent but grossly negligent. We believe when he found upon his first stop that his vision was interfered with by conditions at the corner, he could have taken some less daring step to ascertain whether it was safe to proceed into Carondelet Street."
It is also well-settled that a motorist who merely stops before attempting to enter into a right-of-way thoroughfare has only performed one-half the duty resting on him. He must not only stop but look out for vehicles on the intersecting street. To stop and then proceed forward without ascertaining if it is safe to do so is negligence of a gross character and renders the person guilty of such imprudence responsible in damages resulting therefrom. Chase v. Burley, La.App., 76 So.2d 587; Anderson v. Morgan City Canning Co., Inc., La.App., 73 So.2d 196; Porter, for and on Behalf of Porter v. De Boisblanc, La.App., 64 So.2d 864; Pancoast v. Cooperative Cab Co., La.App., 37 So.2d 452; Glen Falls Ins. Co. v. Copeland, La. App., 28 So.2d 145; Arline v. Alexander, La.App., 2 So.2d 710; Goff v. Southern Coffee Mills, La.App., 144 So. 513.
There has not been pointed out to us in the record any evidence which goes to show that Parish operated his Buick automobile in a negligent manner. He was driving along and going about his business at a lawful rate of speed and the accident was caused solely by the fault of Mrs. Ehtor in entering the intersection at a blind corner without knowing whether there was oncoming traffic which could interfere with her passage. In the light of the circumstances it is certain that Parish was in close proximity to Perdido Street. The stop sign with which Mrs. Ehtor was faced had the effect of constituting Saratoga Street, insofar as this particular intersection is concerned, a favored street, and Parish had the legal right to assume that motorists on Perdido Street would respect his right of way and comply with the law by stopping and looking before attempting to negotiate a crossing. The jurisprudence of this state is clear that a driver on a right-of-way thoroughfare has the right to entertain a belief that motorists on intersecting streets and roads will comply with the law and will not enter on the superior thoroughfare in his path, especially when he knows that a stop sign inhibits entrance from the inferior street. Bahry v. Folse, La.App., 83 So.2d 912; Anderson v. Morgan City Canning Co., Inc., supra; Federal Ins. Co. v. Lepine, *547 La.App., 55 So.2d 83; Salvation Army v. Toye Bros. Yellow Cab Co., La. App., 52 So.2d 873; Young v. New Orleans Public Service, Inc., La.App., 35 So.2d 881; Droddy v. Southern Bus Lines, Inc., La. App., 26 So.2d 761; Termini v. Aetna Life Ins. Co., La.App., 19 So.2d 286; Upton v. Bell Cabs, Inc., La.App., 154 So. 359.
The trial judge was of the opinion that Mrs. Ehtor acquired a right of way to complete the crossing of the intersection by reason of having entered it first. In the reasons for judgment no authorities are cited which hold that under circumstances similar to those existing in the instant case a motorist situated as was Mrs. Ehtor gained a right of way by making such entry into the intersection. Plaintiff relies heavily on Booth v. Columbia Casualty Co., 227 La. 932, 80 So.2d 869, 870, and what was said by the Supreme Court in that case probably inclined the trial judge to the view that the pre-emptive right of way belonged to Mrs. Ehtor. The Supreme Court found that the plaintiff in the cited case first entered the intersection traveling at the rate of about 7 miles an hour and was fully within the intersection when his car was struck by a garbage truck. The Court said:
"* * * The plaintiff having pre-empted the intersection had the right to proceed and under the well-settled jurisprudence the automobile which first enters an intersection has the right of way over an approaching automobile and the driver who does not respect this legal right of the automobile which first entered the intersection to proceed through in safety, is negligent, even though the car thereafter entering the intersection is being driven on a right of way street. * * *"
Decisions of the Supreme Court are to be accorded only a reasonable construction, and with this in mind we feel sure that the Supreme Court never intended that its holding in Booth v. Columbia Casualty Co., supra, would be applicable in a case such as the one before us where the motorist claiming the pre-emptive rights entered a narrow intersecting street without looking and fully cognizant of the fact that to attempt a crossing would be equivalent to gambling with life and limb. Lest it be forgotten, Mrs. Ehtor testified:
"* * * Well, after you give your gas and start over, if you see anyone, you would certainly have to rush to get over, you understand, when you see something coming. * * *"
We think that the jurisprudence applicable to the case is to be found in the many decisions of the Courts of Appeal to the effect that the motorist, before he can successfully rely on pre-emption, must show that he made entry into the intersection at proper speed and sufficiently in advance of the car on the intersecting roadway to permit him to proceed on his way without requiring an emergency stop by the other vehicle. The entry into the intersection just a fraction of a second ahead of the other vehicle does not create a pre-emption. Vernaci v. Columbia Cas. Co., La.App., 71 So.2d 417; Lafont v. Nola Cabs, Inc., La.App. 65 So.2d 918; Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829; Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127; Facio v. Bellone, La.App., 39 So.2d 448; Butler v. O'Neal, La.App., 26 So.2d 753.
We are not reversing the judgment on a question of fact for we do not differ with the trial court in his appreciation as to what the facts are, except that we do not agree that Parish was exceeding the speed limit. The reversal comes strictly as a result of the difference of opinion as to whether there was a lawful pre-emption of the intersection by Mrs. Ehtor. We do not believe that there was.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that the suit of plaintiff be dismissed at plaintiff's cost in both courts.
Reversed.