111 So.2d 852 (1959)
Dallas JANICE, Individually, etc., Plaintiff-Appellee,
v.
James C. WHITLEY et al., Defendants-Appellants.
No. 4813.
Court of Appeal of Louisiana, First Circuit.
May 1, 1959.
*853 Dubuisson & Dubuisson, Opelousas, for appellants.
Richard B. Millspaugh, Opelousas, for appellee.
Before LOTTINGER, TATE and HOOD, JJ.
*854 TATE, Judge.
This is a suit for damages resulting from an intersectional collision.
At about 7:00 P.M. on April 16, 1955, a vehicle driven by defendant Whitley struck plaintiff's passenger automobile. The latter was being driven by Justine Janice, aged 18. Passengers therein were her father and four-year-old sister, Mary Ann. The father brought this suit individually and as tutor of his minor daughters to recover for injuries sustained as a result of the accident. Made defendant were Whitley and his liability insurer.
Defendants appeal from adverse judgment. Plaintiff Janice answers the appeal, seeking an increase in the award.
Plaintiff's car was on the right of way street. It was struck on its left between the fender and the driver's door, and after its front had crossed the mid-line of the intersection. Both vehicles were travelling with lights on and at moderate speedsdefendant Whitley's at 25 mph, plaintiff's at 10 mph.
Stop signs marked the right of way of the thoroughfare upon which plaintiffs were travelling, and defendant Whitley was under the facts clearly negligent in having failed to observe and to respect such superior right of way. This was, in fact, conceded at the trial; and the issue of liability is narrowed down to whether plaintiff's driver was contributorily negligent in having failed to observe, before the impact, defendant's car approaching from her left.
The driver with the right of way is ordinarily entitled to proceed toward and into an intersection upon the assumption that inferior traffic will respect his superior right to proceed, Steele for Use and Benefit of v. State Farm Mutual Ins. Co., 235 La. 564, 105 So.2d 222, Stevens v. Delanoix, La.App. 1 Cir., 96 So.2d 844, Guillory v. Frank, La.App. 1 Cir., 95 So.2d 197, certiorari denied, Commercial Credit Corp. v. Serpas, La.App. 1 Cir., 94 So.2d 83, unless he should reasonably realize in time to avoid an accident that the inferior traffic will continue into the intersection, Starnes v. Mury, La.App. 1 Cir., 90 So.2d 901, Miller v. Abshire, La.App. 1 Cir., 68 So.2d 143, Droddy v. Southern Bus Lines, La.App. 1 Cir., 26 So.2d 761.
This court has repeatedly held that when both drivers are approaching the intersection at normal speeds "the driver with the superior right of way is entitled to proceed into the intersection and will be held free of negligence in an ensuing collision, since he is not called upon to anticipate that the other vehicle will fail to respect his own right of way, nor is he put on notice in the absence of the other vehicle's excessive speed or other circumstance reasonably perceived in time to avoid the accident that the other vehicle will enter the intersection in violation of the favored driver's right to enter same," Johnson v. Southern Bell Telephone and Telegraph Company, La.App. 1 Cir., 106 So.2d 22 at page 25.
Under these principles the trial court did not err in holding that the negligence of defendant Whitley in failing to respect plaintiff's vehicle's right of way was the sole proximate cause of the accident. Had plaintiff's driver observed defendant's vehicle approaching the intersection, there is nothing shown by way of any excessive speed or proximity to the intersection of the Whitley car prior to her own entry to put her on notice that Whitley would fail to accord her the right of way to which she was entitled. Thus her naked failure to observe Whitley's approach prior to the impact was not a proximate cause of the accident. Nix v. State Farm Mut. Ins. Co., La.App. 1 Cir., 94 So.2d 457; Gautreaux v. Southern Farm Bureau Cas. Co., La.App. 1 Cir., 83 So.2d 667; Duke v. Malone, La. App. 1 Cir., 57 So.2d 711; Boullion v. Bonin, La.App. 1 Cir., 2 So.2d 535.
In this connection, it is well to note that at her speed of 10 mph (that is, 14.6 feet per second), the accident near the mid-line *855 of the intersection (24 to 29 feet in width) occurred approximately a second after plaintiff's driver had made her lawful entry thereonto; or within an interval (considering reaction time) following such lawful entry during which it was not possible for her to avoid the accident, even if thereafter she had the opportunity to observe Whitley's continued approach to the intersection.
A fair construction of plaintiff's driver's testimony evidences that prior to her entry she made observation to her left but failed to perceive Whitley's car approaching because of a store building on the corner obstructing her view. While the driver on the less favored street may be held negligent for entering when his view of traffic approaching the intersection is obstructed by a blind corner (Ehtor v. Parish, La.App.Orleans, 86 So.2d 543), we have pointed out that the driver on the favored street is ordinarily not contributorily negligent in proceeding past a blind corner into an intersection at a reasonable speed, nor for failing to observe the approach of vehicles on less favored intersecting streets when the view is blocked. Stevens v. Delanoix, La.App. 1 Cir., 96 So.2d 844; Brashears v. Tyson, La.App. 1 Cir., 86 So.2d 255. See also: Turner v. Southern Farm Bureau Cas. Co., La.App. 2 Cir., 91 So.2d 436; Stovall v. Washington, La.App.Orleans, 88 So.2d 483; Parish v. Ehtor, La. App.Orleans, 86 So.2d 548; Lewis v. Groetsch, La.App.Orleans, 32 So.2d 396.
In these cases, some concerning facts almost identical to the present, the favored driver was held entitled to proceed into the intersection upon the assumption that motorists on the side street would respect his right of way. Basically, this is because otherwise, in derogation of the legislative purpose in providing for the right of way, all traffic would have to come to a standstill at such intersections.
Perhaps, as eminent counsel for defendants-appellants suggests, this intersectional collision would not have occurred if both vehicles had observed the other and had stopped. Likewise, no intersectional collisions could occur if all motorists would stop so long as any other traffic is in sight approaching from any cross direction. Further, no automobile accidents could occur if the vehicles were left in the garage rather than used on the street. But such speculations as to how the physical possibility of accidents might be averted are not decisive of the legal issues, which concerns not primarily physical possibilities by which accidents might be avoided, but rather the violations of legal duties which cause or contribute to an accident.
As was well stated by the late Judge Taliaferro in Mason v. Price, La.App. 2 Cir., 32 So.2d 853, at page 855:
"It may be conceded, without affecting the outcome of the case, that by the exercise of a superlative degree of care by plaintiff the accident would and could have been averted. But, under the circumstances, was he required to do this? We do not think so. If, in such circumstances, a motorist should be required to bring his vehicle to a stop or reduce its speed to a snail-like pace at every intersection and await the action of motorists on less favored streets, the advantages the law intends to accord would, in a large measure, be lost. The right-of-way would not be such in reality."
As to quantum, defendants and plaintiff complain that the award is, respectively, excessive and inadequate.
The trial court awarded to plaintiff Janice the sum of $750 for the use and benefit of his 4-year-old daughter, Mary Ann, for her pain, suffering, and shock resulting from a cut lip and a slight temporary internal injury which produced traces of blood in the urine but cleared up without residual; $500 for the use and benefit of his daughter Justine, resulting from a bruise on the hip and a mild cerebral concussion causing slight headaches for about four months after the accident; and *856 to plaintiff Janice individually the sum of $4,562, for the following:

 $900.00 loss of earnings resulting from
 injuries sustained in the accident,
 through August, 1955 (4½
 months);
 2000.00 pain and suffering resulting from
 back sprain and line fracture
 without displacement of cervical
 disc, non-disabling after August,
 1955, although with slight residual
 in the way of minor headaches
 for several months thereafter;
 250.00 medical expenses resulting from
 accident, Dr. Rozas, Dr. Gilly,
 Dr. Romagosa, and St. Landry
 Clinic;
 907.00 medical expenses of treatment
 and medication for plaintiff himself
 furnished by Dr. D. J. deBlanc,
 through August, 1955;
 144.00 medical expenses of treatment
 and medication for minor
 daughter, Mary Ann, furnished
 through[1] September, 1955;
 361.00 medical expenses of treatment
 and medication for minor daughter,
 Justine, furnished through[1]
 August, 1955.
________
$4562.00 Total

Medical evidence was produced on behalf of the defendants tending to show that the injuries should have cleared up sooner and should not have needed as extensive treatment and medication; and on behalf of the claimants, their own testimony and that of their attending physician would tend to show more serious and permanent pain and suffering. We do not think the trial court committed manifest error in accepting the testimony of the attending physician that the complaints persisted for at least the period in question, nor in holding that a preponderance of the other medical testimony supports a finding that the need for further medical treatment of the conditions noted ceased after the dates in question.
A preponderance of the evidence in the record, as accepted by the trial court, justifies our holding that the injuries were of the nature above described, and that the awards therefore were neither manifestly excessive nor manifestly insufficient. See, e. g., awards made by this court in: Fabre v. Grain Dealers Mut. Ins. Co., La.App., 99 So.2d 380; Oliveira v. Crowther, La.App., 96 So.2d 96; Green v. Southern Furniture Co., La.App., 94 So.2d 525; Benoit v. Commercial Cas. Ins. Co., La.App., 79 So.2d 647.
Appellants further contend that the award for treatment during the period of disability and illness should be reduced because of the generalized opinion of two of the specialists that the cost of the treatment should have been lower and that the claimants' attending physician, in common with many other general practitioners, furnished what the specialists felt to be an unnecessary amount of diathermy and medication.[2]
The law reports, and no doubt the medical treatises also, are replete with illustrations of how sincerely-felt medical opinions may nevertheless differ widely. We, *857 who do not hold medical degrees and who did not have the duty to treat and to afford relief from pain to these patients, are not disposed to question the treatment afforded them by their attending physician during the period they are found to have been suffering as a result of the accident; and especially not on the basis of general estimates by specialists not personally familiar with the condition of the patients during this period of treatment or not sharing the theory of medical treatment followed by the attending physician as well as other doctors.
However, through clerical inadvertency the award to plaintiff for the cost of his individual medical treatment by Dr. deBlanc through August, 1955, also included the first item of $56 for treatments afforded through the first half of September. The award must be reduced to that extent. Likewise, omitted was an award for the stipulated damage to plaintiff's car, $100, to include which the award must be increased. There is thus to be a net increase in plaintiff's award of $44.
One further serious issue requires comment.
The trial court denied plaintiff recovery for a totally disabling condition of retro-bulbar neuritis, or inflammation of the optic nerves, which was discovered following April of 1956, almost a year after the accident. (Recovery was also of course disallowed for the $268 medical bill for treatment thereof.) Medical treatment had arrested development of this condition in plaintiff in 1954 prior to the accident, but the medical evidence indicates that re-activation of such a latent condition can result from trauma. Re-manifestation in such instances usually occurs within 72 hours of the trauma, although not necessarily in an acute form. It may also result from other causes.
Due to the absence of complaints from the plaintiff as to a recurrence of the eye condition until almost a year after the accident, although recognizing the force of plaintiff's argument to the effect that remanifestation may have been suspended by the extensive medication taken by plaintiff commencing three weeks after the accident, we are not prepared to find that the trial court committed manifest error in holding that plaintiff has not borne his burden of proving by a preponderance of the evidence that the remanifestation of this disabling eye condition was causually related to the accident of a year before.
For the above and foregoing reasons, the award in favor of plaintiff individually is increased by the sum of $44; and as thus amended, the judgment is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] Through clerical error, in the reasons for judgment it is stated that the medical expenses are awarded "from" the months of August and September, respectively, but it is apparent from the sense and the total amount of the award that said word was used inadvertently instead of the intended word "through".
[2] There are expressions in the testimony of two local general practitioners that the extended course of medical treatment may not have been necessary in the light of their own diagnoses of the injuries, which tended to consider the injuries as slighter and more temporary than did Dr. deBlanc, whose testimony as attending physician was accepted by the trial court to the extent above indicated. But the former doctors' testimony is barren of any opinion that the medical treatment afforded by Dr. deBlanc was (accepting his diagnosis) unnecessary or unreasonable, or that the charges made by the said attending physician for any individual item furnished were unreasonable or not in accord with the local practice.