## ASHY et al. v. MISSOURI PAC. R. CO.
### No. 1940.

Court of Appeal of Louisiana. First Circuit.
Feb. 15, 1939.

Lee Caplan, of Alexandria, and Grover C. Vidrine, of Oakdale, for appellants.

Hudson, Potts, Bernstein, & Snellings, of Monroe, and E. R. Kaufman, of Lake Charles, for appellee.

DORE, Judge.

Mrs. Adele Ashy and her husband, Mitchell Ashy, filed this suit against Guy A. Thompson as Trustee for the Missouri Pacific Railroad Company in Receivership, to recover damages for personal injuries sustained by them and for damage to their automotive truck resulting from defendant's train running into the truck. The plaintiffs claim that at about 5:15 P. M. on December 4, 1936 Mitchell Ashy was driving their one and one-half ton truck in a westerly direction on Fifth Street in the Town of Oakdale in the Parish of Allen, accompanied by his wife and their small child, and that upon arriving at a point about 25 feet from the Missouri Pacific railroad tracks which cross the said Fifth Street at right angles, he came to a full stop and looked in both directions and neither saw nor heard the approach of a train; that he thereupon proceeded to cross the tracks but upon getting the front wheels of the truck just beyond the first rail thereof the truck stalled and bogged and remained in that condition for

a minute or slightly longer, and that suddenly Mrs. Ashy noticed the train bearing down upon them when at a distance of about 150 feet too late, in spite of her warning, for Mr. Ashy to get out of the way or to get his wife and baby out of the truck, resulting in the train smashing into the truck and causing the personal injuries and damage for which this suit is brought. The plaintiffs aver that the accident was caused by the gross negligence of the railroad company in that no whistle was blown or bell rung giving warning of the approaching train; that the train did not have its headlight turned on, and that the railroad crossing was in such condition as to cause the truck to bog and stall. In the alternative plaintiffs claim that the defendant had the last clear chance to avoid the accident since the truck was in full view of the approaching train and the engineer thereof could easily have seen the truck from a distance of 500 yards, especially since the lights of the truck were turned on and the lights of another motor vehicle proceeding in the rear of the truck were shining on it.

The defendant denies any negligence on its part and sets forth that the accident was caused entirely by the negligence of the plaintiffs, and pleads, in the alternative, if it is found that it was guilty of negligence contributing to the accident, that the plaintiffs were also guilty of negligence contributing to the accident. The defendant avers that the plaintiffs failed to make the stop required by law as well as by the dictates of common prudence; that the train was proceeding in accordance with all provisions of law, including the giving of all required signals, such as the blowing of the whistle and ringing of bells, at the proper time and places; and that the plaintiffs were not seen by the engineer until the train was within 150 feet from them, at which time it is alleged the truck was approaching the track from a distance of 20 to 25 feet; that the engineer at that time, as soon as he saw plaintiffs' truck, applied the brakes to the train but was unable to stop until after he had collided into the truck.

The District Court rendered judgment in favor of the defendant and against the plaintiffs, dismissing their suit. The plaintiffs have appealed.

We have before us on this appeal only questions of fact: Was the accident caused by the negligence of the defendant railroad? And, in the event that it is shown that plaintiffs were also guilty of negligence, did the defendant have the last clear chance to avoid the accident? The trial judge answered both of these questions in the negative, and it is our problem to determine whether or not he manifestly erred in the light of the evidence before him.

He has rendered a twenty-one page decision in which he discusses the evidence in detail. The first point he makes in his decision is with reference to whether or not the railroad gave the proper signals in approaching the crossing where the accident occurred. He points out that two witnesses testified that the train's headlights were burning, while the plaintiff Ashy testified that the lights were not burning, and one witness did not think he had seen any lights; four witnesses were positive that the bell was ringing up to the time of the collision, while the plaintiff Mr. Ashy testified that the bell did not ring and three witnesses testified that they did not hear any bell, and one witness testified that the best she could tell the bell was ringing; nine witnesses testified that the whistle blew before and at or after the Santa Fe railroad crossing, a distance of more than 500 feet from the crossing where the accident occurred, while Mr. Ashy testified that the whistle did not blow at all and Mrs. Ashy stated that she did not hear any whistle. On that evidence, the trial judge concluded that the plaintiffs had failed to prove by a preponderance of evidence that these proper signals were not given, and we cannot find that he manifestly erred in his conclusion.

On the question as to whether or not Mr. Ashy approached the crossing in a prudent and careful manner, the trial judge points out that the evidence is entirely irreconcilable; that the plaintiffs and their witnesses testify that they stopped at a distance of 20 to 25 feet from the tracks, and that Mr. Ashy thereupon proceeded up the incline of the crossing and upon getting the front wheels of the truck over the first rail became bogged and could not move either forward or backward and remained in that precarious position for one minute or more; and that, on the other hand, the defendant produced six witnesses to the accident, four disinterested and two employees of the railroad, who testified to the effect that plain-

tiffs did not reach the tracks until the train was within 150 feet of the crossing. The locomotive engineer of the train testified that he was keeping a close lookout and did not see the truck until the train was within 150 feet of the crossing at which time the plaintiffs were within 20 to 25 feet from the crossing, and that he thereupon threw on his brakes to avoid the impending collision but could not possibly stop the train within the distance.

On that evidence the trial judge concluded that he could not escape the conviction that if the plaintiff stopped his truck at all it must have been for the purpose of shifting gears to make the incline of the crossing, and that certainly, in view of the weight of the evidence in the record, had he looked and listened or had he maintained or kept up a proper lookout before going on the tracks, he could not have failed to have heard and seen the locomotive. The trial judge was of the further opinion that the plaintiffs failed to prove by the weight of evidence that the truck was stalled on the tracks in the manner and for the period of time as contended by them; but that, on the other hand, in his opinion the weight of evidence showed that the plaintiff drove his truck almost immediately in front of the train in his attempt to make the crossing and that he did not see nor hear the locomotive until it was almost on him. Counsel for plaintiffs urge in their brief before us that it is established by the evidence that the plaintiffs did stop within 25 feet of the crossing as required by law, but they fail to cite any satisfactory evidence to show why they failed to hear or see the approaching train in the event that they did so stop. They contend that trees on the side of the tracks interfered with plaintiffs' vision to the extent that they could not see for a distance of more than 500 feet; but fail to cite any specific evidence in support of that point and fail to offer any satisfactory explanation as to why, if such were the case, the plaintiff did not approach the tracks to a point where they could have a better view of approaching trains, and fail further to satisfactorily explain why these plaintiffs were unable to hear the approaching train even if they were unable to see it. We cannot see wherein the trial judge has erred in his conclusion with reference to the negligence of the plaintiffs.

The trial judge has clearly and correctly pointed out the law with reference to the angle of this case relating to Mrs. Ashy, who was her husband's guest in the truck. As pointed out by him, Mrs. Ashy testified that she knew the railroad crossing was there, that it was dangerous, and that a train was due in the evening at about the time of the accident; that when the truck stopped she looked and listened and saw and heard nothing; that the truck was stalled for over a minute on the tracks. The trial judge states that while under our jurisprudence a guest is not held to the same degree of care and diligence to which the driver of an automobile is held, nevertheless the guest is accountable for plainly apparent hazards, and in the light of the evidence Mrs. Ashy did not fulfill that degree of accountability. We cannot say from a review of the evidence that the lower court manifestly erred in that conclusion.

Lastly, the trial judge points out that he cannot agree with the contention of plaintiffs that the defendant is liable under the doctrine of "the last clear chance," since from the evidence it appears to him that the defendant's locomotive engineer used every precaution to prevent the accident including the applying of the brakes as soon as plaintiffs' truck appeared within his line of vision, but that it was a physical impossibility to stop the train within a short enough distance to avoid the accident. On that point, also, we cannot say that the lower court manifestly erred.

It is our conclusion, therefore, that the accident was caused, if not by the sole lack of due care of the plaintiffs, at least by contributing negligence on their part, and that the lower court did not commit any manifest error in arriving at his decision. We therefore affirm the judgment.