132 So.2d 61 (1961)
Jerry G. GRAY
v.
ILLINOIS CENTRAL RAILROAD COMPANY.
No. 5371.
Court of Appeal of Louisiana, First Circuit.
June 30, 1961.
*62 Joel B. Dickinson, Baton Rouge, for appellant.
H. Payne Breazeale of Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LANDRY, Judge.
Plaintiff herein, Jerry G. Gray, has taken this appeal from the judgment of the trial court rejecting and dismissing his tort action against defendant, Illinois Central Railroad Company, for damages for personal injuries and property loss sustained and incurred in an accident in which plaintiff drove his automobile into the side of defendant's freight train at a grade crossing in the City of Baton Rouge, Louisiana. In dismissing plaintiff's claim, the trial court predicated its judgment upon the finding that plaintiff's negligence was the sole proximate cause of the accident.
The undisputed facts in this case are relatively simple. At approximately 2:30 a. m., January 25, 1960, plaintiff, traveling alone, was driving his Ford automobile north on Chippewa Street (a four-lane throughway in the City of Baton Rouge) at an estimated speed of 35 to 40 miles per hour and while so proceeding ran into the twenty-first car of defendant's thirty car freight train which was traversing a grade crossing of said street. At the time of the accident the weather was foggy and the headlights on plaintiff's vehicle were burning brightly. Plaintiff did not see the train until he was only five or six feet distant therefrom and upon detecting its presence he immediately applied his brakes but was unable to avoid the then inevitable collision which ensued. Defendant's train, in the process of negotiating a "Y" which connected with defendant's main line, was proceeding over the grade crossing at an estimated speed of eight to ten miles per hour.
The record reveals Chippewa Street to be a recently open four-lane throughway actually constituting an extension or projection of North Third Street in the City of Baton Rouge. The lawful speed limit for vehicles traversing said thoroughfare is forty miles per hour. The crossing in question is not protected or guarded by any special system of automatic warning lights or barriers of the type which have become a common sight on our present day highways and city streets. On either side of the crossing defendant has caused to be erected the usual and customary stop sign with the admonition "Louisiana Law Stop" appearing *63 thereon. In addition to the foregoing warning sign, the Louisiana Highway Department has installed on either side of said crossing the familiar round yellow sign bearing a black "X" or cross and the letters "R.R." normally erected by the highway department of this state in proximity to railway crossings to further alert motorists to the presence of such hazards. Said latter signs were situated on the shoulder of the street approximately fifty to sixty feet distant from defendant's tracks. The crossing in question is situated in a curve and on a slight downward slope. Defendant's train proceeding in a northerly direction entered the crossing from plaintiff's right.
Regarding visibility on the night in question, plaintiff concedes he was traveling with his headlights burning and further acknowledges the weather was foggy but maintained he could see "pretty good". On this score, however, he was contradicted by the testimony of his brother, Gerald L. Gray, who was following plaintiff in another vehicle and who testified that because of the fog visibility "was not too good". Gerald further testified he arrived at the scene after the train had completed its crossing and observed plaintiff's wrecked vehicle just in time to avoid colliding therewith.
In substance the various members of the train crew testified that before negotiating the crossing the train was stopped south of Chippewa Street to permit the brakeman to alight therefrom and check for approaching traffic. Upon the engineer halting the train the brakeman descended from the locomotive, lighted a flare or fusee, proceeded afoot to the center of the street to warn approaching motorists and, observing no oncoming vehicles, signalled the engineer to proceed. With the engine's horn blowing and bell ringing the engineer proceeded slowly across the intersection. When the engine reached the approximate center of the street the engineer ceased sounding the horn but continued to ring the bell until the locomotive had completely traversed and intercepted the crossing. As the engine reached the far side of the street the brakeman discarded his flare beside the roadway and reboarded the train which continued to a switch at which point it stopped only long enough to allow the brakeman to operate the switch so that the train might enter the main line. Plaintiff having struck the twenty-first car of the train, none of the train crew were aware of the occurrence of the accident until subsequently advised thereof by city police summoned to the scene by plaintiff's brother Gerald.
From the foregoing it will be readily observed plaintiff was the only eye-witness to the accident. Although his testimony does not so show with complete certainty, the preponderance thereof is to the effect the train was in motion at the time of impact.
The gravamen of plaintiff's complaint is that defendant, having constructed a grade crossing over a four-lane main thoroughfare in a large city, was guilty of negligence in failing to install automatically operated signal lights, warning devices or barriers to alert the motoring public to the presence of trains. Plaintiff further maintains defendant was guilty of negligence in failing to cause its employees to flag approaching vehicles or set out flares or lights to warn the traveling public that one of defendant's trains was impeding travel on a main traffic artery in the capital city of this state. Additionally plaintiff argues the instant case is one in which we should invoke the "dangerous trap doctrine" recently reaffirmed and applied by this court in McFarland v. Illinois Central Railroad Company, 122 So.2d 845, 853, considering the crossing herein involved intersects a throughway of a large city at a point where said thoroughfare curves on a downward slope thereby obstructing visibility of defendant's trains.
On the other hand, defendant contends its crossing does not constitute a dangerous trap because, irrespective of the prevailing conditions there is no obstruction or impediment of vision and that, had plaintiff been driving at a reasonable speed under the existing circumstances and maintaining a *64 proper lookout, plaintiff could and should have seen the train in time to bring his vehicle to a safe stop and avoid the collision. Defendant further maintains it has erected the only signs required of it by law, that it is not incumbent upon defendant to provide the crossing with further warning devices or cause its employees to flag traffic after the train has completely blocked the street and its failure to do either does not constitute negligence on defendant's part. Defendant also contends its employees were free of negligence in any form and that the sole proximate cause of the accident was plaintiff's own negligence in traveling at an excessive rate of speed and failing to maintain a proper lookout. Alternatively, defendant pleads contributory negligence on the part of plaintiff.
As stated in the McFarland case, supra, negligence must be determined in the light of the facts and circumstances of each particular case. As also stated in the McFarland case, supra, application of the "dangerous trap doctrine" with respect to railway grade crossing of public streets or highways is dependent upon the circumstances attending each case in which the rule is sought to be applied.
The "dangerous trap doctrine" applied in the McFarland case, supra, is predicated on the well recognized principle that if a grade crossing is unusually dangerous, ordinary care requires the railway company to meet the danger with unusual or extraordinary precautions, especially where there is an obstruction of view which prevents a motorist from seeing an approaching train until he is dangerously close to the track. In such instances the railway company is under a duty to exercise caution commensurate with the circumstances to avoid accidents such as by decreasing the speed of its trains or increased warnings or otherwise. See American Jurisprudence Volume 44, Verbo Railroads § 507, Page 747.
In the McFarland case, supra, the facts were that defendant's tracks intercepted the street or highway at a sharp angle, the crossing was situated atop an incline and visibility was obstructed both by a box car stationed on a siding near the crossing and also by weeds, trees and brush which defendant railroad had permitted to grow along and upon its right of way.
The facts in the case at bar are vastly different from those in the previously mentioned McFarland case. Although the crossing in the case at bar is situated in a curve and on a slight downgrade of the street there is no obstruction or impediment of view. Photographs introduced in evidence disclose that a motorist maintaining a proper lookout has an unimpeded view of a train on the track as it crosses the street. Moreover, plaintiff's automobile was not struck by the engine or first car of defendant's train to reach the intersection but rather plaintiff ran into the side of defendant's moving train after it had completely fouled or blocked the street. Learned counsel for plaintiff has cited no case or authority in which the dangerous trap doctrine has been applied to a situation wherein a motorist collided with a train under circumstances similar to those in the case at bar. So far as we are aware the rule has been invoked only in those situations wherein the motorist's vehicle is struck by either the engine of a train as it proceeds over the crossing or the rear car of a train being backed over a street or highway intersection. The locomotive of defendant's train negotiated the crossing considerably before plaintiff reached the scene. As previously stated, plaintiff ran into the side of the twenty-first car of the train which he could and should have seen had he been maintaining a proper lookout and traveling at a speed commensurate with prevailing weather conditions. The train crew had taken every precaution to warn motorists of the train's approach prior to the engine entering the intersection. The locomotive had negotiated the crossing without incident, the train was there for all approaching motorists to see and the railway employees had no reason to suspect *65 that careless or unheeding motorists would either fail to detect or disregard its presence. The employees of the railway company were entitled to assume that approaching motorists would exercise their sense of sight and stop in time to avoid colliding with the train. We conclude, therefore, the dangerous trap doctrine is inapplicable to the case at bar.
The rule with respect to the liability of a railway company for injury to a motorist colliding with a train standing on a street or highway crossing is, in American Jurisprudence, Volume 44, Verbo Railroads, Page 740, Section 501, stated thusly:
"§ 501. The liability of a railroad company for injury resulting from the collision of a road vehicle with a car or train standing on a highway crossing is generally based on negligence, there is usually no liability on the part of the railroad company on the ground of nuisance. If a railroad company is not negligent toward travelers on a highway in blocking the crossing at night with a train it is not liable for injuries to either an automobile driver or his guest by collision with the train, notwithstanding they may also have been free from negligence, since the relative rights of the parties under such circumstances are coequal.
"Where negligence is relied on as the basis for recovery for the death or injury of one who drives into a train or car standing on a crossing, it must be shown that the negligence was the proximate cause of such death or injury. Thus, in blocking of a highway crossing by a standing train for a time longer than that allowed by statute does not render the railroad company liable for injury resulting from the collision of an automobile with the train, where the violation was not the proximate cause, but merely a condition, of the accident.
"In general, in the absence of special statute or ordinance, the presence of a railroad train or cars on a crossing is notice to the driver of a vehicle on the highway of such obstruction; and if there are no unusual circumstances, the railroad company is not chargeable with negligence per se merely because it leaves a train across the highway, without stationing guards, placing lights on the cars, or otherwise giving warning of the presence of the cars across the highway. The leaving of a train across the highway without lights or other signals to disclose its presence cannot be considered as the effective cause, but merely as the condition, of injuries resulting to a traveler who runs into or against the train. In reference to injuries resulting from an automobile colliding with a train standing on a highway crossing at night, the rule is stated that the railroad company and those in charge of its trains have the right to assume, or are justified in assuming, that persons traveling by automobile at night will adopt such lights and drive at such rate of speed as will enable them to see a train of cars across the highway and to bring the automobile to a stop before coming into collision with the cars, and therefore the railroad company is not negligent in failing to give warning of the presence of the train, particularly where there is no obstruction to sight and the train may be plainly seen for a sufficient distance to enable travelers to stop."
With respect to automobiles or other vehicles colliding with the side of a moving train the general rule is set forth in American Jurisprudence, Volume 44, Verbo Railroads, Page 742, Section 502, as follows:
"§ 502. Ordinarily, a railroad company can hardly be charged with negligence where injury results from a collision with an automobile and the *66 side of a moving train on the crossing. The train in such case is rightfully occupying the crossing, and the fact that it is there is a sufficient warning to the traveler upon the highway. In the absence of a statute imposing an absolute obligation in this respect, a railroad company is not bound to have gates, lights, or other warnings at a crossing in order to prevent such an occurrence unless the circumstances are such that ordinary prudence and foresight would anticipate that it might happen in the ordinary course of events. * * *"
We are unaware of any law or statute of our state requiring a railway company to equip its crossing with gates, lights or other similar devices to warn motorists of the presence of a train negotiating a grade crossing of a street or highway. Nor are we cognizant of any specific authority obligating a railway company to post flagmen or set out flares to caution motorists when its trains are proceeding over or standing upon a grade crossing. The only specific obligation of railroads in this regard is to be found in LSA-R.S. 45:562 which imposes only the duty of erecting the customary "Louisiana Law Stop" sign which the evidence herein discloses was complied with by defendant.
We fail to see wherein the circumstances surrounding the crossing involved in this litigation were such as to require additional warning when defendant's trains are in the act of traversing the intersection in question. There is absolutely nothing to block the view of defendant's train either passing over or standing idle upon the track crossing this particular street. Under such circumstances defendant railroad cannot be held guilty of negligence for failure to take further precautions.
Assuming, solely for the sake of argument, that defendant was guilty of negligence in failing to install lights or barriers or in failing to station a flagman or set out flares, it is clear plaintiff's contributory negligence would bar his recovery herein. The record indicates beyond doubt plaintiff had used this particular thoroughfare previously in going back and forth from his residence and was aware of the presence of the tracks. It further appears plaintiff was guilty of negligence in either traveling at an excessive speed in view of the prevailing foggy weather or in not keeping a proper lookout, or both. In any event plaintiff's testimony is to the effect he did not see the train until only five or six feet distant therefrom. If plaintiff could see "pretty good" as he testified there is no reason why he did not see the train in time to stop. If visibility was "not so good" as testified by plaintiff's brother, plaintiff was under a duty to reduce the speed of his vehicle so as to be able to stop within the range of his vision. Plaintiff was guilty of further negligence in failing to stop in obedience to the provisions of LSA-R.S. 45:563 and LSA-R.S. 32:243 which both require that a motorist shall stop and look for the approach of trains before proceeding across a railway grade crossing of a public street or highway. In this same connection see Hutchinson v. Texas & N. O. R. Co., La.App., 33 So.2d 139, Alanza v. Texas & P. Ry. Co., La. App., 32 So.2d 341 and Ashy v. Missouri Pacific R. R. Co., La.App., 186 So. 395.
It is settled law in this state that one whose contributory negligence constitutes a proximate cause of an accident may not recover for injuries sustained therein notwithstanding defendant's negligence. Matthews v. New Orleans Terminal Co., La.App., 45 So.2d 547, Hutchinson v. Texas & N. O. R. Co., supra, Wyche v. Brian, La.App., 28 So.2d 143.
Judgment affirmed.