W. W. THOMPSON, Judge pro tern.
Defendant appeals from a judgment of the trial court awarding plaintiff damages allegedly sustained as a result of a collision between plaintiff’s automobile and a railroad locomotive operated by defendant. The trial court, in awarding judgment for plaintiff in the amount of $827.55, made no written findings of fact.
The accident in question occurred at approximately 10:15 P.M., at a railroad crossing at the intersection of St. James and Tchoupitoulas Streets in the City of New Orleans. Defendant maintains a railroad spur track that extends from the River, down the center of St. James Street, across Tchoupitoulas Street, and into a rice mill located on the Lake side of Tchoupitoulas Street. This rice mill contains a large door into which the railroad track enters and into which defendant’s locomotives move in order to receive and deliver boxcars needed to service the activities of the mill. The mill is located adjacent to a sidewalk parallel to Tchoupitoulas Street, and at the time of the accident, there was a trailer truck parked against the mill on the sidewalk along Tchoupitoulas Street, although the testimony concerning the exact distance of the trailer from the crossing is conflicting. There are no signs on Tchoupitoulas Street warning motorists of the presence of the railroad crossing, but plaintiff testified that he had travelled this route many times. In addition, this was an industrial area, and plaintiff, being himself the employee of another railroad, was well aware that trains could be expected to use these tracks at all times. On the corner opposite the door of the rice mill there was located the usual illuminating street light that was in operation on the night of the accident. On this particular evening, it was misting and the streets were wet.
According to plaintiff’s testimony, he was traveling alone in his automobile in an uptown direction on Tchoupitoulas Street. In the direction from which plaintiff was traveling, Tchoupitoulas Street is straight and *695 level for a distance of several blocks. Plaintiff testified that he was traveling at a speed of from 25 to 30 miles per hour, with his dim lights and his windshield wipers operating. The small vent window in the front of the vehicle was the only window open on the automobile. Upon reaching a point located some 50 feet from the railroad crossing, plaintiff suddenly saw the headlight of a locomotive indicating the presence of a train in the crossing ahead. He immediately applied his brakes, but the automobile swerved and skidded on the wet pavement, striking the side of the locomotive. The point of impact with relation to the street was approximately in the center of Tchoupitoulas Street. Plaintiff testified that he neither saw nor heard any indication of the presence of the locomotive in the crossing prior to seeing the headlight on the locomotive. As a result of the collision, plaintiff sustained minor personal injuries and serious damage to his car, both of which are the subject of this suit.
Although several other witnesses testified to related events occurring before and after the collision, the only other witnesses who actually saw the accident were the switch-man and the engineer operating defendant’s train. It was their testimony that the locomotive had been driven into the mill head first, and had coupled onto several boxcars. The switchman, stationed at the rear of the locomotive near the door of the mill had received the signal from inside the mill that the train was ready to be backed out of the door. The switchman then went into Tchoupitoulas Street, and seeing that no vehicles were approaching the crossing, signaled the engineer to begin backing the train out of the mill. As the train began to move, the switchman, equipped with the standard 6-volt electric railroad lantern, began walking ahead of the train out into the center of Tchoupitoulas Street waving his lantern to warn any approaching traffic of the presence of the train in the crossing. According to the uncontroverted testimony of defendant’s witnesses, the train was moving at a speed of 2 to 3 miles per hour. Defendant’s witnesses also testified that the automatic air bell, as well as the headlights, running lights, number lights and step lights on the locomotive were operating at this time. As the locomotive began to negotiate the crossing, the switchman first noticed plaintiff’s approaching automobile approximately 300 feet away. At this time, the switchman walked back into plaintiff’s lane of the street, and directing the beam of the lantern toward the approaching vehicle, began to more vigorously wave the lantern to warn plaintiff. According to the testimony of the engineer and the switchman, plaintiff’s vehicle was traveling at a speed in excess of 40 miles per hour. Despite the increasingly frantic waving of the lantern, plaintiff evidently failed to see the warning being given because he did not begin applying his brakes until he was some 125 to 150 feet from the crossing. Realizing that plaintiff would not be able to stop his vehicle in time to avoid colliding with the locomotive, the switchman began to run toward the mill to avoid being struck himself. At the same time, the engineer, seated in the cab of the locomotive on the side from which plaintiff was approaching, reached the same conclusion and immediately brought the train to a stop. At the moment of impact, the train was stopped with the leading or rear edge of the locomotive resting on the River side of the center of Tchoupitoulas Street.
As stated above, this court does not have the benefit of a written finding of fact or reasons for judgment. Therefore, it is assumed that the trial court accepted the version of the accident as related by the testimony of plaintiff and that the court awarded judgment on that basis.
The question presented is whether or not defendant was negligent in the operation of this train at the crossing on the night in question, and if so, whether or not plaintiff’s recovery is precluded because of his own contributory negligence.
In his brief, counsel for plaintiff contends that the facts of this case show that the *696 crossing in question was of an extraordinarily dangerous nature. He points to the fact that the presence of the rice mill located adjacent to the street conceals any train that might be approaching the crossing and renders it impossible for a motorist traveling on Tchoupitoulas Street to anticipate that a train will cross the street ahead until it is too late to avoid a collision. In addition, plaintiff contends that the trailer truck parked against the mill further obstructed his view of the tracks as they emerged from the mill door. Able counsel argues that this extraordinarily dangerous crossing, made more hazardous on the night of the collision by adverse weather conditions, calls for application by this court of the “dangerous trap doctrine”. That doctrine, as discussed by the court in Gray v. Illinois Central Railroad, La.App. 1st. Cir., 132 So.2d 61, is as follows:
“The ‘dangerous trap doctrine’ applied in the McFarland case, supra, is predicated on the well recognized principle that if a grade crossing is unusually dangerous, ordinary care requires the railway company to meet the danger with unusual or extraordinary precautions, especially where there is an obstruction of view which prevents a motorist from seeing an approaching train until he is dangerously close to the track. In such instances the railway company is under a duty to exercise caution commensurate with the circumstances to avoid accidents such as by decreasing the speed of its trains or increased warnings or otherwise.”
Plaintiff urges that a finding by this court that the crossing in question constituted a “dangerous trap”, coupled with a finding that the facts surrounding the accident were as plaintiff related them, compels this court to conclude that defendant was negligent in failing to provide unusual or extraordinary precautions for approaching motorists and that this negligence was the cause of the resulting collision.
Defendant urges this court, on the other hand, to adopt the factual version of the accident as related by its witnesses. It contends that, even assuming that this crossing did constitute a “dangerous trap”, nevertheless the facts indicate that by reducing the speed of the train, providing adequate lights and bell on the locomotive and furnishing a flagman with a lantern to warn motorists approaching the crossing, defendant did take the unusual and extraordinary precautions required under the circumstances and thus was guilty of no negligence. In the alternative, defendant contends that plaintiff was contributorily negligent in failing to keep a proper lookout and in traveling at an excessive rate of speed under the circumstances. Defendant argues that the mere presence in the crossing of this large locomotive, equipped with lights and further illuminated by the street light at the intersection should have been sufficient warning to any observant motorist that the crossing was in use.
Even assuming that the facts were as plaintiff’s testimony relates them, nevertheless we are of the opinion that defendant was guilty of no negligence.
The record establishes that plaintiff approached the crossing at a speed of from 25 to 30 miles per hour with his headlights illuminating the street ahead. Defendant’s locomotive, with at least the headlight operating, emerged from the door of the rice mill and traveled to a point located several feet on the River side of the center of Tchoupitoulas Street. The street light on the corner opposite the door of the mill further illuminated the area.
 It is true that the proximity of the door of the rice mill to the street, coupled with the presence of the trailer truck and the reduced visibility caused by the misting rain hampered plaintiff’s view of the train as it reached the crossing. These facts do show that the crossing in question constituted a “dangerous trap”, thus placing upon defendant the duty of taking unusual and extraordinary precautions to avoid accidents with motorists, crossing its tracks.
*697 But we are convinced that by reducing the speed of its locomotive to the speed of a man walking and by providing lights on the locomotive, defendant exercised ordinary care under the circumstances. The fact that the train was brought to a stop in a distance of several feet shows that it was being operated with utmost care and caution. We do not believe that the obstruction of plaintiff’s vision of the edge of the tracks as they enter the crossing was the cause of the collision. To the contrary, taking into account the speed and size of the locomotive and the speed of plaintiff’s vehicle as it approached the crossing, it is clear that the train was in full view of the approaching motorist a sufficient period of time for him to have observed it had he been operating his automobile in a reasonably prudent manner.
And assuming that defendant was, in fact, guilty of negligence in not providing further warning in the form of a flagman or railroad crossing light, still we think plaintiff’s failure to keep a proper lookout and operate his vehicle at a reasonable speed renders him contributorily negligent. Plaintiff knew of the existence of the crossing at this point, and being a railroad employee himself, he must have known that the railroad tracks in this highly industrialized area were in use at all hours. If, as he contends, his visibility was reduced due to the misty rain, he should have reduced the speed of his vehicle so that it could be stopped within the range of his reduced vision.
The only case cited by Plaintiff supporting his contention that the instant facts call for application of the “dangerous trap doctrine” is McFarland v. Illinois Central Railroad, La.App. 1st Cir., 122 So.2d 845. There, defendant’s tracks cross the highway at a sharp angle. The view by a motorist of the tracks as they approached the crossing was almost totally obstructed by a boxcar spotted on defendant’s spur track adjacent to 'the main track and by tall vegetation that defendant had permitted to remain on the right of way on each side of the crossing. Defendant’s train, traveling in this urbanized area at a speed of 30 miles per hour, struck and killed a motorist attempting to negotiate this crossing. The railroad company had failed to furnish any warning at the crossing other than the standard railroad crossing signs. There, the Court found that the crossing was of such extraordinarily dangerous nature, that ordinary care required defendant to take unusual precautions to protect motorists crossing the tracks. Having found that the obstructions at the crossing deprived the motorist of an adequate view of defendant’s approaching train, the court held that defendant’s failure to provide warning lights or a flagman at the crossing was the proximate cause of the ensuing collision, which, coupled with the excessive speed at which the train was traveling, made the railroad liable under the circumstances. The record clearly indicates that the motorist could not have learned of the approaching train without practically going on the railroad track itself, and even then, the speed at which defendant’s train was traveling would have made it impossible for the motorist to have escaped being struck.
However, conceding that the railroad crossing in the instant case is, like the crossing in the McFarland case, supra, of such an extraordinarily dangerous nature as to require unusual precautions on the part of the railroad company, still we are of the opinion that defendant exercised reasonable care under the circumstances. In the McFarland case, supra, the motorist was, himself, struck by a speeding train whose presence he was almost powerless to discover until it was too late to avoid being struck in the absence of some unusual warning being given. In the present case, plaintiff struck the side of a lighted locomotive, which considering the illumination of the crossing and the length of time the train was visible to approaching motorists, should have been observed in time to stop *698 his vehicle had the driver been keeping a proper lookout and traveling at a reasonable speed. Since it is undisputed that the train in the present case was traveling at such a slow speed that the engineer was able to bring it to a stop within a period of several seconds, we are of the opinion that defendant took all precautions required by the standard of ordinary care.
In further support of this conclusion, it should be noted that the facts of the instant case are not unlike those presented to the Court in the Gray case, supra. There, the crossing was situated on a curve at a slight downgrade in the highway. Plaintiff, approaching the crossing on a foggy night, collided with the twenty-first boxcar of defendant’s moving train. Defendant had provided no warning of the presence of the train other than the usual railroad crossing signs. Admittedly, there were no objects obstructing plaintiff’s view of the train in the crossing. In refusing to apply the “dangerous trap doctrine”, the court held that the railroad company was entitled to assume that any motorist approaching the crossing would take notice of the train in the crossing and stop in time to avoid a collision. The court further held that, even assuming that the railroad company was negligent in not providing warning lights or a flagman to warn traffic, still plaintiff was contributorily negligent in not keeping a proper lookout and in not traveling at a reasonable rate of speed in view of the prevailing foggy weather. We are of the opinion that here, as in the Gray case, the mere presence of the locomotive in the crossing was sufficient notice to plaintiff that he should bring his automobile to a stop, and his failure to notice the train or his inability to stop his vehicle in time was not caused primarily by any fault on the part of the defendant.
For the foregoing reasons, the judgment of the trial court is reversed. Plaintiff to pay the costs of both courts.
Reversed.